Harold L. WATHAN, Sr., Plaintiff,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, a New York Corporation, Metropolitan Life Insurance Company, a New York Corporation, Defendants.

No. 83–3285.

United States District Court,
C.D. Illinois,
Springfield Division.

June 16, 1986.

Ronald L. Carpel, Ltd., Gary W. Bryan, Decatur, Ill., for plaintiff.

Robert G. Heckenkamp, Springfield, Ill., Harold A. Tenney, Decatur, Ill., for defendants.

## ORDER

MILLS, District Judge:

A question of libel.

Summary judgment allowed as to Metropolitan, denied as to Equitable.

This matter is before the Court upon Plaintiff's objections to two recommendations filed herein by U.S. Magistrate Charles H. Evans on March 26, 1986. 28 U.S.C. § 636(b)(1)(C). The first recommended that the motion for summary judgment filed by Defendant Equitable Life Assurance Society of the United States (Equitable) be allowed as to Count I of Plaintiff's complaint. The second recommended that the motion for summary judgment and the motions to strike filed by Defendant Metropolitan Life Insurance

Company (Metropolitan) be allowed as to Count II.

Pursuant to Local Rule 18(c)(2), the Court has made a *de novo* review of the objections to the Magistrate's recommendations. It is this Court's determination that the Magistrate's recommendation will be adopted with respect to Defendant Metropolitan and rejected with respect to Defendant Equitable.

### Background

Harold L. Wathan, Sr., brings this diversity action against Equitable and Metropolitan for libel and tortious interference with business relations. He first claims that in October of 1982 an agent of Metropolitan, Mr. Dean Mesnard, prepared a libelous handbill, and in November distributed six to eight of them at a life insurance underwriter association meeting. Plaintiff further alleges that on November 18, 1982, an agent of Equitable, Mr. Roe Skidmore, again libeled him by mailing a copy of the handbill to one of Plaintiff's clients.

Plaintiff initially filed suit against Equitable on September 26, 1983. No action was, however, commenced against Metropolitan until October 26, 1984, when Plaintiff amended his complaint to include Metropolitan as a defendant.

Both Defendants move for summary judgment of the libel counts against them on the basis of the Illinois one-year statute of limitations for actions sounding in libel. *See* 1981 Ill. Rev. Stat. ch. 83, ¶ 14. The Magistrate first found that Plaintiff's action against Metropolitan was time-barred in that it commenced almost two years after the publication of the handbill by Mr. Mesnard. In so holding, the Magistrate rejected Plaintiff's argument that his lack of knowledge that Metropolitan was a proper defendant operated to toll the limitations period under the Illinois "discovery rule." This Court agrees that Plaintiff's arguments were properly reject-

ed and concurs in the able reasoning of the Magistrate. *Ergo*, his recommendation will be followed as to Defendant Metropolitan.[1]

After recommending that Metropolitan's motion for summary judgment be granted, the Magistrate further held that Plaintiff's action against Equitable is barred by the Illinois Uniform Single Publication Act (USPA), 1985 Ill. Rev. Stat. ch. 126, ¶ 11 et seq. This Act provides:

> No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one edition of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions.

Based on this statute and the Illinois case of *Founding Church of Scientology v. AMA*, 60 Ill.App.3d 586, 18 Ill.Dec. 5, 377 N.E.2d 158 (1st Dist.1978), the Magistrate concluded that the mere redistribution of a copy of the original publication by Equitable does not create a separate cause of action against Equitable. Under this theory, therefore, Plaintiff would not have a separate cause of action against someone who merely redistributes copies of an already published statement.

Plaintiff objects to this interpretation of the statute, and argues that the Commissioner's prefatory note to the USPA demonstrates a clear intent on the part of the drafters of the statute to not extend its reach to situations involving multiple defendants who separately publish similar material. The Commissioner's note states that:

> *This act adopts the single publication rule for defamation*, invasion of privacy,

---

1. The Court agrees with the Magistrate's thorough and reasoned analysis of this issue. Under Illinois law, once the plaintiff is on notice that he or she has a *cause of action*, a duty to inquire is triggered, and the claim that the plaintiff does not have knowledge of the parties involved does not operate to toll the statute of limitations. *See McDaniel v. Johns-Manville Sales Corp.*, 542 F.Supp. 716, 718–19 (N.D.Ill. 1982).

or any other tort such as slander of title, disparagement of goods, injuries, falsehood or the like, *which is founded upon a single integrated publication.* The intention is to adopt the rule as it has been developed in common law in the states which have accepted it. *The Act is not intended to have any application to* the causes of action of two or more separate plaintiffs who are defamed in the same publication, or to *the causes of action of one plaintiff against two or more separate defendants, each of whom has published the same statement or taken part in the same publication.*

Uniform Single Publication Act, Commissioner's prefatory note, pages 351–352. (Emphasis added.)

Finding in favor of Equitable, the Magistrate gave apparent credence to Equitable's argument that this note concerns itself only with two or more defendants that have comprised or compiled the same statement. On its face, however, the final sentence of this note appears to allow separate causes of action by one plaintiff against separate defendants where: (1) more than one defendant publishes the same statement, *or* (2) more than one defendant takes part in the same publication. Further examination of the history of this statute is, however, required to determine whether, as is the case here, a redistribution of a copy of a libelous publication by someone other than the original libelor falls within the ambit of the USPA.

## I

To begin the analysis, it is important to recognize the conditions that led to the passage of the Uniform Single Publication Act. The traditional common law rule with respect to libel held that each communication of a defamatory statement created a separate cause of action. *See Duke of Brunswick v. Harmer,* 14 Q.B. 185, 117 Eng. Rep. 75 (1849). This rule became swiftly outmoded with the development of

mass media because it created the possibility that a single defamatory statement contained in a newspaper or magazine could give rise to millions of causes of action. If, for example, a newspaper printed an article and that newspaper was purchased by one hundred individuals, each communication of the defamatory article was a tortious act resulting in the injured party having one hundred causes of action.

■ To alleviate the problem of multiplicity of causes of actions, Illinois, in addition to six other states, has adopted the USPA.[2] In other states, the single publication rule has been adopted as part of the common law. *See, e.g., Wolfson v. Syracuse Newspapers, Inc.,* 254 App. Div. 211, 4 N.Y.S.2d 640 (1938), *aff'd* 279 N.Y. 716, 18 N.E.2d 676 (1939). The central purpose of this legislation is to protect publishers and others involved in the communication industry from undue harassment by preventing a multitude of lawsuits based on one tortious act. *See Graham v. Today's Spirit,* 503 Pa. 52, 468 A.2d 454, 458 (1983); *Belli v. Roberts Brothers Furs,* 240 Cal. App.2d 284, 288, 49 Cal.Rptr. 625 (1966). Because multiple lawsuits arising out of a single sale of some publication would unnecessarily burden the courts and harass the defendants, the plaintiff is allowed, against a single defendant, only one suit in which to recover for all completed distributions of a single edition of a periodical or book. The rule as originally developed by the common law thus sought to protect the mass media while preserving the rights of a libeled plaintiff to redress.

In *Khaury v. Playboy Publications, Inc.,* 430 F.Supp. 1342 (S.D.N.Y.1977) for example, the court expressly focused on the purpose of a single publication rule in rejecting Plaintiff's argument that the rule was inapplicable to claims of violation of the New York civil rights law. As stated by the Court:

**2.** In addition to Illinois, six other states have adopted the USPA by statute. These states are Arizona, A.R.S. § 12–651; California, West's Ann. Civ. Cal. Code §§ 3425.1 to 3425.5; Idaho,

I.C. §§ 6–702 to 6–705; New Mexico, NMSA 1978, §§ 41–7–1 to 41–7–5; North Dakota, NDCC 14–02–10; and Pennsylvania, 42 Pa.C.S.A. § 8641.

This rule was adopted in recognition of the vast multiplicity of suits which could arise from mass publications which transcend a variety of medias and state lines, and the attendant problems of choice of law, indefinite liability, and endless tolling of the statute of limitations. See *Gregoire v. G.P. Putnam's Sons*, 298 N.Y. [119] at 124–125, 81 N.E.2d 45, Prosser, *Interstate Publications*, 51 Mich.L.Rev. 959, 960–964 (1953).

*It would appear that the rule, then, is not aimed at the particular tort alleged, but rather at the manner in which the tort is executed. If the wrong arises out of a mass communication,* then whether it sounds in defamation or statutory invasion of privacy, the same considerations should apply. See Prosser, *Interstate Publication*, 51 Mich.L. Rev. 959, 963–964 (1953). Indeed, the late Judge Hincks of the Second Circuit, sitting on the district court of Connecticut, so held in *Fouts v. Fawcett Publications*, 116 F.Supp. 535, 536 (D.Conn. 1953); and other jurisdictions have likewise ruled. See, e.g., *Jackson v. Ideal Publishing Corp.*, 274 F.Supp. 318 (E.D. Pa.1967).

430 F.Supp. at 1345 (emphasis added).

These and other authorities are consistent in the view that the single publication rule is applicable only to single, integrated publications involving the mass media. Nonetheless, some courts have expanded the scope of the rule—which is based on judicial economy and undue harassment of defendants—to purposes beyond those for which it was originally devised, and to situations where the concept is a complicating and often misleading factor. *See* Note, *The Single Publication Rule in Libel: A Fiction Misapplied*, 62 Harv. L. Rev. 1041, 1042 (1949).

One such purpose has been the use of the single publication rule to determine when a libel action is barred by the Statute of Limitations. For instance, courts have uniformly held that an action for multiple-impact libel must be commenced within the short statutory period (normally one year) after the single publication occurs. *See, e.g., Means v. McFadden Publications,*

*Inc.*, 25 F.Supp. 993 (S.D.N.Y.1939). Although application of the rule appears just in the ordinary situation envisioned by the rule, it can produce injustice when the facts begin to depart from that norm.

An example is the rule that the tort embraces both prior and subsequent circulation, and is complete at the moment of publication. Under this rule, the plaintiff is barred if he fails to sue within the statutory period no matter how long the defendant continues to distribute the libelous material. *Gregoire v. G.P. Putnam's Sons, Inc.*, 298 N.Y. 119, 81 N.E.2d 45 (1948); *Wolfson, supra.*

And although some courts have held that distribution of copies of a *new* printing constitutes a separate cause of action, *see e.g., Kanarek v. Bugliosi*, 108 Cal.App.3d 327, 166 Cal.Rptr. 526 (1980) (the republication of a hard cover book in paperback form is a new issue), a publisher could still print a number of copies of a libelous article, distribute a few and, after the statutory period has elapsed, distribute the remainder with impunity. *See Winrod v. McFadden Publications, Inc.*, 62 F.Supp. 249, 251 (N.D.Ill.1945). It is therefore possible that application of the rule can give decisive effect to a case where a plaintiff has not been fully compensated for the additional damage to his reputation.

## II

In light of such concerns, a number of courts have formulated tests in an attempt to determine when the subsequent distribution of libelous material gives rise to a new cause of action. The test most often stated in Illinois is the one first announced in the leading New York case of *Wolfson v. Syracuse Newspapers*, 254 App. Div. 211, 4 N.Y.S.2d 640, *aff'd* 279 N.Y. 716, 18 N.E.2d 676 (1938). Plaintiff in that case contended that the statute of limitations had not run on his libel claim because the defendant had made bound copies of a newspaper (containing the alleged libelous material) accessible to the public sometime after the original publication. The Court dismissed the action, holding that "[i]f the bar of the

statute of limitations can be lifted by means such as plaintiff now seeks to employ, we may no longer term it a 'statute of repose' which makes effective a purpose which the legislature has conceived to be imperative—to·outlaw stale claims."

In discussing the fact that the defendant had made bound volumes of the article available to the public, the Court characterized the Defendant's conduct as merely "passive." The test then adopted by the Court is whether a defendant *consciously* republishes a defamatory article:

First: The plaintiff should be required to unite in one complaint, all causes of action for all publications of all libels, published by the same defendant, prior to the commencement of the action, to the end that in one suit all damages to plaintiff's reputation shall be awarded. In such suit he should be allowed to prove all *subsequent* libels of the *same* or *similar* accusations up to the time of the trial. In this suit all republications may be considered by the jury on the question of malice, and a judgment should be a bar to all subsequent suits for any similar publication up to the trial. Second: The test of whether the article is a republication or a repetition should not depend on an interval of time, or a separate sale but upon the answer to the question. *Was the act of the defendant a conscious independent one?* The individual who sends the same letter to different persons at the same or another time, consciously and intentionally and independently does so. Each separate mailing is a separate *conscious* act. Each would then be provable as showing conscious intent. Whereas, in the case of a newspaper, as the circulation is considered one of the chief items of damage, and plaintiff recovers for all the distribution, no *conscious* intent arises until the defendant *consciously* as a second edition republishes the article. In each case it is the *conscious* act which determines. If these simple rules are followed, the plaintiff will be compelled, as he should, to litigate in one action all his claims for damage arising from all libelous publications of the defendant, up to and including the trial, (except libelous publications of *different* character arising after the action has been commenced); and the question of malice or intent from repetition of the libel can be submitted to the jury, as it should be, upon the *conscious* act of republication by the defendant.

*Winrod v. Time, Inc.,* 334 Ill.App. 59, 72, 78 N.E.2d 708 (1948) (*quoting Wolfson, supra*).

The only other Illinois case to consider these issues and the case relied upon by the Magistrate, *Founding Church of Scientology v. American Medical Association,* 60 Ill.App.3d 586, 18 Ill.Dec. 5, 377 N.E.2d 158 (1978), adopts the *Winrod* test. In *Founding Church,* the AMA published an alleged defamatory article in the December 1968 issue of AMA's monthly magazine "Today's Health." The plaintiff further alleged that the AMA caused reprints and copies of the article to be delivered to three newspapers some seven years after the initial appearance of the article. The Court held that plaintiff's cause of action, filed in 1975 (within one year after the copies were distributed) was barred by the operation of the statute of limitations and the USPA:

Here, the allegedly defamatory article was published generally and released in 1968. Neither the FCS's original charge, nor its amended complaint that a "reprint" of the article was distributed to three journalists, and other unnamed individuals, were sufficient to give rise to a new cause of action in 1975, or, under *Insull* and *Winrod,* could be considered to constitute a second edition or new publication in 1975. The three copies released by Campion in 1975 were mailed on an isolated basis and were nothing more than miscellaneous copies incidental to the general publication of the article 7 years earlier. *To conclude otherwise and consider them a "republication," would cause havoc with the law of libel and expose a publisher or author to a lawsuit years after his article had first been published simply because he or someone else chose to xerox a copy or two and mail the photocopy to a friend or, for example, to a magazine*

*as part of a letter to an editor.* Exposing the author or publisher to a libel suit in such an instance would be particularly unjust as well as unrealistic because the article in question might well be on file in libraries, and so open to the public anyway.

Accordingly, because the copies mailed 7 years after the original publication did not constitute a "republication" giving rise to a new cause of action for libel, the statute of limitations began to run at the time of the original publication in December 1968. The time for bringing this suit expired 1 year later, and the FCS's first count alleging libel is barred by Illinois' statute of limitations on libel. Ill. Rev. Stat. 1975, ch. 83, par. 14.

*Id.* at 589, 18 Ill.Dec. 5, 377 N.E.2d 158 (emphasis added).

The Magistrate's order holding that Plaintiff's action against Equitable is barred by the USPA is based in part upon that language of *Founding Church* stating that a republication cannot occur merely because "he *or someone else* chose to xerox a copy" of the original article. *Founding Church* did not, however, hold that this should preclude a cause of action against the second "publisher" of the material; rather, the Court held that the later recopying and distribution of libelous material should not "expose [the initial] publisher or author to a lawsuit years after his article had first been published ..." *Id.* Thus, the Court, following the holding of *Winrod,* rejected Plaintiff's argument that the incidental copying of the original article constituted such a "conscious intent" to republish so as to again expose the *original publisher* to liability.

■ This Court believes, however, that two essential factors distinguish *Founding Church* from the case at bar. The first is

that Equitable is alleged to have republished a pamphlet initially published by someone else. As noted previously, the Commissioner's note to the USPA states that the Act is not intended to have application to "the causes of action of one plaintiff against two or more separate defendants, each of whom has published the same statement or taken part in the same publication." Commissioner's prefatory note, at 351–52. Further, the common-law history of the Act makes it clear that the Act is intended to limit a plaintiff to a single cause of action against one defendant who publishes a number of copies of a defamatory item. This purpose has no application to a case, where, as here, someone other than the original publisher allegedly commits a separate tort by republishing the same item.[3]

A case supporting this view is *Graham v. Today's Spirit,* 503 Pa. 52, 468 A.2d 454 (Pa.1985). There, the Pennsylvania Supreme Court held that the publication of a defamatory article by two separate newspapers created two separate causes of action. The Court appeared to ground its decision on the fact that the purpose of the USPA was inapplicable where two separate torts are committed by two separate entities:

> The cause of action is predicated upon the commission of a tortious act. For each tortious act, a party is entitled to be compensated.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> The "single publication rule" was intended to protect the communication industry from undue harassment and unjust punishment by preventing a party from filing a multitude of lawsuits based on one tortious act, and by restricting the time in which such lawsuits may be com-

---

**3.** At common law a person who republished a defamatory statement made by another was himself liable for defamation even though he gave the name of the originator. Restatement of Torts, § 578 (1978). And although the absolute liability which attached to defamation at common law was supplanted as to public figures by *New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706 (1964), and its progeny, the republisher of a defamatory statement made by another remains subject to liability if he, at the time he published the statement, knew it to be false, or acted in reckless disregard of its truth or falsity. *Catalano v. Pechous,* 83 Ill.2d 146, 50 Ill.Dec. 242, 419 N.E.2d 350 (1980); Restatement (Second) of Torts, § 578 (1977).

menced. The rule permits full recovery for all damages suffered by the injured party in all communities in which the defamatory statement has been communicated.

Applying these principles to this case in its present posture, it is evident that the Appellants have alleged two separate causes of action. The first tortious act occurred when the defamatory article was published in the *Today's Post* in Montgomery County, while the second tortious act occurred when the defamatory article was published in *Today's Spirit.* *Graham v. Today's Spirit,* 468 A.2d at 458. Thus, as in *Graham,* the Plaintiff here should not be precluded from claiming that someone other than the initial libelor republished a defamatory statement and committed a separate tort. We cannot subscribe to the view that the single republication act—which protects a publisher from numerous lawsuits based on one tortious act—can be extended to insulate another person from liability when that person commits a separate tort through the republication of a defamatory statement. *Cf. Kanarek v. Bugliosi,* 108 Cal.App.3d 327, 332, 166 Cal.Rptr. 526 (1980) ("[t]he protection of the act is not extended ... to situations where, knowing that matter is allegedly libelous, the defendant republishes.")

A second factor also distinguishes this case from *Founding Church.* The alleged libel in that case was distributed via the mass media, and the Court found that the later distribution of copies of the article to three individuals was merely "the release of miscellaneous copies incidental to the general publication." *Founding Church, supra,* 60 Ill.App.3d at 589, 18 Ill.Dec. 5, 377 N.E.2d 158 (*quoting Winrod v. Time, Inc.,* 334 Ill.App. at 72, 78 N.E.2d 708). Thus, the central purpose of the USPA—to protect those involved in the mass media— was clearly applicable in that case. By contrast, the case at bar does not involve the mass media; rather, it concerns the distribution of a "wanted poster" at an insurance underwriter's meeting and the alleged redistribution of the poster by one of the individuals present at the meeting.

It would therefore strain the rationale of the USPA to attempt to apply the rule in this situation, where the mass media is not involved. Moreover, even under the *Founding Church* rule, we do not believe that it can be said that the redistribution of the wanted poster by an agent of Equitable was merely incidental to the original publication. *See* Restatement of Torts Second, § 577A ("the single publication rule ... does not include separate aggregate publications on different occasions... In these cases the publication reaches a new group and the repetition justifies a new cause of action.").

■ This Court holds, therefore, that the USPA does not bar a separate cause of action arising out of a single defamatory statement when (1) someone other than the original libelor consciously republishes the statement, and (2) the alleged republication is not incidental to a mass distribution of the statement. We believe this construction of the statute affords the needed protection for the First Amendment rights of the communications industry while at the same time preserving a plaintiff's right to redress for injuries arising out of the wrongful publication of defamatory statements.

### Conclusion

In accordance with the foregoing, the recommendation of the Magistrate as to Defendant Equitable is rejected. Equitable's motion for summary judgment is DENIED.

The Magistrate's recommendation with respect to Defendant Metropolitan is adopted by this Court and will be followed. Metropolitan's motion for summary judgment is ALLOWED.