FIRST DIVISION 

March 1, 1999

No. 1-96-3183 & 1-96-3215

FREDERICK C. DUBINSKY and ROGER HALL,

Plaintiffs-Appellants,

v.

UNITED AIRLINES MASTER EXECUTIVE COUNCIL, a component of the Air Line Pilots Association, International, AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, RANDOLPH BABBITT, HOWARD PIKE, HARLOW OSTEBOE, ALLAN L. HOLMES, RICHARD HURST, GERALD BALDWIN, STEPHEN WALLACH, B.F. ENGLEMAN, W.B. GEORGE, W.B. BURN, AND BRUCE RICHARDS,

Defendants-Appellees

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 95 L 12013

Honorable

Paddy H. McNamara,

Judge Presiding.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Plaintiffs Frederick Dubinsky and Roger Hall brought this action for defamation and false light invasion of privacy. Plaintiffs' allegations arise from several statements made by defendants which plaintiffs allege falsely accuse them of criminal conduct related to the employee purchase of United Airlines under an employee stock ownership plan (ESOP).  Defendants filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1996)) asserting plaintiffs failed to state a claim upon which relief may be granted.  The trial court entered an order dismissing 15 of the 18 counts in plaintiffs' complaint.  

The trial court found that plaintiffs had no reasonable expectation of privacy and dismissed the false light claims alleged in counts II, IV, VI, VIII, X, XII, XIV, XVI and XVIII.   The trial court dismissed defamation counts III and VII, finding the statements were reasonably capable of innocent construction and not actionable as defamatory 
per se
.  Count V, which is a republication of the letter at issue in count I, was dismissed on the basis that republication of a statement that is not actionable cannot give rise to liability. The court dismissed defamation counts IX and XI, finding these counts alleged republications that were "merely incidental" to the original publication.  The court upheld counts I, XV and XVII, finding they each stated a cause of action for defamation. It is from this order that plaintiffs appeal, and defendants cross-appeal.

I. FACTS

On appeal, the remaining defendants include the Air Line Pilots Association (ALPA), Harlow Osteboe, Allan Holmes, Richard Hurst, Gerald Baldwin, Stephen Wallach, B.F. Engleman, W.B. George, W.B. Burn and Bruce Richards.  ALPA is a labor union whose members are commercial pilots. The structure of ALPA is as follows:  At the time of the incidents giving rise to this lawsuit, Osteboe was master chairman of the "United Airlines Master Executive Council" (UAL-MEC), the ALPA council for pilots employed by United Airlines (United); Holmes, Baldwin, Wallach, Engleman, George and Burn were officers of locals of the UAL-MEC and were members of the UAL-MEC; and Hurst and Richards were members of a local of the UAL-MEC. 

In 1989, when plaintiff Dubinsky was chairman of the UAL-MEC, an unsuccessful attempt was made by employees of United to purchase the airline under the ESOP; in 1994, when plaintiff Hall was the chairman, the employee buy out was successful.  It was the largest employee acquisition in the history of American business.

ALPA staff attorney Charles Goldstein was compensated with a fee substantially above his salary both in 1989 and in 1994, when the successful buy out occurred.  Certain members of the UAL-MEC criticized the plaintiffs' role in facilitating the fee to Goldstein in several articles published and distributed to union members and in an oral statement made before several United Airlines piots and their wives.  The law firm of Jenner & Block was retained to investigate the payment of the fee to Goldstein.  The firm issued a report in September of 1994, concluding that neither plaintiff had committed any criminal act or violated any criminal law.  Further, the report noted that although Goldstein received a $375,000 fee following the failed 1989 buy out attempt, he never received the $2 million fee agreed to by plaintiff Hall following the successful employee buy out in 1994.

On appeal, the issue is whether plaintiffs have adequately stated causes of action for defamation and false light invasion of privacy.  Also at issue is whether the actual malice standard applies and whether certain counts of the complaint are precluded by the Uniform Single Publication Act (740 ILCS 165/1 (West 1996)).

II. ANALYSIS

A.  Standard of Review 

In reviewing an order on a section 2-615 motion to dismiss, the court shall apply a 
de novo
 standard of review.  
Board of Library Trustees v. Cinco Construction, Inc., 
276 Ill. App. 3d 417, 658 N.E.2d 473 (1995).  For purposes of this motion to dismiss, the court must determine whether the complaint sufficiently states a cause of action; the merits of the case are not considered.  
Jespersen v. Minnesota Mining & Manufacturing Co., 
288 Ill. App. 3d 889, 681 N.E.2d 67 (1997).  All well-pleaded facts are taken as true and considered in the light most favorable to the plaintiffs.  
Rodgers v. Whitley, 
282 Ill. App. 3d 741, 668 N.E.2d 1023 (1996).  The complaint is to be construed liberally and should only be dismissed when it appears that the plaintiff could not recover under any set of facts.  
Illinois Graphics Co. v. Nickum, 
159 Ill. 2d 469, 639 N.E.2d 1282 (1994).

A section 2-615 motion attacks only defects apparent on the face of the complaint and is based on the pleadings rather than the underlying facts.  
Urbaitis v. Commonwealth Edison, 
143 Ill. 2d 458, 475, 575 N.E.2d 548 (1991). In the present case, plaintiffs have incorporated several exhibits into their complaint, including the letters and articles at issue here, which must be considered when analyzing the sufficiency of the pleading.  We will address the sufficiency of each count on an individual basis.

B. Defamation

A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him or her.  Restatement (Second) of Torts §559 (1977).  

To prove a claim of defamation, a plaintiff must show that the defendant made a false statement concerning plaintiff, that there was an unprivileged publication of the defamatory statement to a third party by defendant and that plaintiff was damaged.  
Krasinski v. United Parcel Service, Inc., 
124 Ill. 2d 483, 530 N.E.2d 468 (1988).   Defamatory statements may be actionable 
per se
 or actionable 
per quod
.  A publication is defamatory 
per se
 if it is so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary and extrinsic facts are not needed to explain it.  
Schaffer v. Zekman, 
196 Ill. App. 3d 727, 731, 554 N.E.2d 988 (1990). A claim for defamation 
per quod
 requires the plaintiff to allege both extrinsic facts to establish that the statement is defamatory and special damages with particularity. 
Schaffer, 
196 Ill. App. 3d at 731. 

The complaint in the present case asserts claims for defamation 
per se
.  Illinois courts have recognized four categories of statements that are considered defamatory 
per se
:  (1) words that impute the commission of a crime; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or a want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business.  
Kolegas v. Heftel Broadcasting Corp., 
154 Ill. 2d 1, 607 N.E.2d 201 (1992).

Under the innocent construction rule, even a statement that falls into one of these categories will not be found defamatory 
per se
 if it is "reasonably capable of an innocent construction."   
Kolegas, 
154 Ill. 2d at 11.  Whether a statement is reasonably capable of an innocent interpretation is a question of law for the court to decide.  
Kolegas, 
154 Ill. 2d at 11.  The Illinois Supreme Court delineated the innocent construction rule as follows:

"[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable 
per se
."  
Chapski v. Copley Press, 
92 Ill. 2d 344, 352, 442 N.E.2d 195, 199 (1982).

If a statement is reasonably capable of a nondefamatory interpretation, given its context, it should be so construed; there is no balancing of reasonable constructions.  
Harte v. Chicago Council of Lawyers, 
220 Ill. App. 3d 255, 260, 581 N.E.2d 275 (1991), citing 
Mittelman v. Witous, 
135 Ill. 2d 220, 232, 552 N.E.2d 973 (1989).  The 
Mittelman 
court noted that this tougher standard is warranted because of the presumption of damages in 
per se
 actions.  
Mittelman, 
135 Ill. 2d at 234.     

In analyzing a claim of defamation, we must further determine whether the alleged defamatory statement constitutes protected speech under the first amendment.  In 
Milkovich v. Lorain Journal Co., 
497 U.S. 1, 111 L. Ed. 2d 1, 110 S. Ct. 2695 (1990), the Supreme Court held that a statement will receive first amendment protection only if it "cannot be reasonably interpreted as stating actual facts" about the plaintiff.  
Milkovich, 
497 U.S. at 20, 111 L. Ed. 2d at 19, 110 S. Ct. at 2706.  The 
Milkovich 
Court 
noted 
that, in some cases, a statement which may be considered an "opinion" is based on specific, objectively verifiable facts.  
The 
Court rejected what it called "an artificial dichotomy between opinion and fact" and noted that expressions of opinion may often imply an assertion of objective fact and, in such cases, would be considered actionable.  See 
Milkovich, 
497 U.S. at 19, 111 L. Ed. 2d at 18, 110 S. Ct. at 2706.  The 
Milkovich 
Court balanced the first amendment's guarantee of free, uninhibited discussion with society's interest in preventing and redressing attacks upon reputation.  
Milkovich, 
497 U.S. at 22, 111 L. Ed. 2d at 21, 110 S. Ct. at 2707-08.

 The Illinois Supreme Court adopted the 
Milkovich 
test in 
Kolegas 
and recently applied it again in 
Bryson v. News America Publications, Inc., 
174 Ill. 2d 77, 672 N.E.2d 1207 (1996).  Whether a statement qualifies as constitutionally protected speech under the first amendment is a matter of law for the court to decide.  
Hopewell v. Vitullo, 
299 Ill. App. 3d 513, 701 N.E.2d 99 (1998).  However, whether the subject statement is actually true or false is a question of fact for the jury.  
Bryson, 
174 Ill. 2d at 100.

Keeping these principles in mind, we now turn to whether plaintiffs have adequately stated a cause of action for defamation in counts I, III, VII, XV and XVII of their complaint.  The counts that allege defamation
 per se
 include the following: the Hurst letter (count I); the Hurst "Sound Advice" article (count III); the Baldwin "Imperial Leader" article (count VII); the Baldwin "Scum Also Rises" newsletter (count XV); and the Richards statement (count XVII).  Counts V, IX, XI, and XIII involve the republication of the above statements, which we will address below.

First, we turn to count I, the Hurst letter.  The trial court found that count I stated a cause of action for defamation, was not subject to an innocent construction and contained objectively verifiable facts that could not be considered protected speech.  Defendants argue the statements in the letter are not actionable because they are subject to a reasonable, nondefamatory interpretation. 

The Hurst letter was written by defendant Hurst in August of 1994 and includes detailed accusations about plaintiffs' alleged wrongdoing in connection with the ESOP and related payments to attorney Goldstein.  The letter was written prior to the release of the Jenner & Block report and states "I believe that Federal laws have been broken."  In the letter, Hurst states that the Departments of Labor and Justice should review the situation and compares it to Watergate.  He states that, "[under] Federal law Roger Hall, Rick Dubinsky and Chuck Goldstein could face prosecution, fines and imprisonment."  Attached to the letter are excerpts from the Racketeer Influenced and Corrupt Organizations (RICO) Act (18 U.S.C. §1961 
et seq.
 (1994 & Supp. 1996)), and a chart summarizing "possible racketeering charges" under the RICO Act, listing plaintiffs and Goldstein as possible defendants. 

Taken in context, we do not find that these statements are reasonably capable of an innocent construction.  The letter contains unambiguous statements attributing criminal activities to plaintiffs, and the letter was clearly intended to convey this message to its readers. Courts must interpret the allegedly defamatory words as they appear to have been used and according to the idea they were intended to convey to the reasonable reader.  
Bryson, 
174 Ill. 2d at 93. 

Defendants note that Hurst uses phrases such as "I believe,"  "I predict" and "it is my judgment" throughout the subject letter and argue that the statements are not facts but opinions.  However, the use of such similar phrases is not sufficient to turn a factual assertion into constitutionally protected speech.  In 
Owens v. CBS, Inc., 
173 Ill. App. 3d 977, 527 N.E.2d 1296 (1988), a plaintiff was wrongly accused of mailing a threatening letter to then-President Reagan.  The defendant stated she "believe[d]" plaintiff wrote the letter and she "thought maybe [plaintiff] had written" the letter.  However, the court noted there was no authority to suggest that "accusation of criminal conduct ceases to become libelous simply because it has not been uttered with certainty."  
Owens, 
173 Ill. App. 3d at 992.  This issue has been squarely addressed by the Supreme Court in 
Milkovich:   

"[T]he statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'  *** '[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words "I think." ' [Citation] "  
Milkovich, 
497 U.S. at 19, 111 L. Ed. 2d at 18, 110 S. Ct. at 2706.

Likewise, in the present case we find that simply prefacing a statement with qualifying language such as "I think" or "I believe" does not turn it into protected speech. To determine whether the alleged defamation is constitutionally protected, we must consider whether a reasonable fact finder could conclude the statement was an assertion of fact.  We believe the statements at issue in count I reasonably could be determined to be assertions of fact in that they specifically outline a number of criminal charges and accuse plaintiffs of violating the law.  Interpreting the words in the Hurst letter as they appear to have been used and according to the idea they were intended to convey to the reasonable reader, we conclude that count I states a cause of action for defamation 
per se
. 

Count III of plaintiffs' complaint is based on an article written by defendant Hurst entitled "Sound Advice," which contained excerpts from the Jenner & Block report and contained Hurst's commentary on its findings.  The trial court dismissed this count as nonactionable on the basis that the statements in the article were subject to a reasonable, innocent construction and could be understood as mere opinion.   Referring to the controversy at issue, Hurst stated that "whether or not RICO or other federal laws apply will be decided in civil court or by the Justice Department" and noted that "Jenner & Block do not determine this."  Hurst urged union members to question their legal representation and noted that  "RICO was specifically written for such questions as bribery, money offered to influence negotiations, mail fraud, laundering money, embezzlement of union funds, collusion, conspiracy, kickbacks, enterprise to dominate labor unions, etc." 

Illinois courts have held that any innocent construction must be a reasonable one.  
Chapski, 
92 Ill. 2d at 351.  The article portrays the ESOP controversy through the eyes of Hurst and reflects Hurst's desire for a thorough investigation of the situation by an outside source.  The article does not directly accuse plaintiffs of illegal activity; rather, Hurst notes that the Justice Department is responsible for determining whether RICO laws apply to the ESOP situation and whether criminal activity occurred is a question for the courts to determine.  

Plaintiffs rely on 
Brown v. Farkas, 
158 Ill. App. 3d 772, 511 N.E.2d 1143 (1986), to support their argument that the Hurst article is not subject to a reasonable innocent construction.  In 
Brown, 
the defendant called the Department of Children and Family Services to report that the plaintiff was bragging of sexual contact with plaintiff's minor daughter.  The court found there could be no reasonable innocent construction of the defendant's statement that the plaintiff had sexual contact with his daughter, because the statement was made to an authority charged with the investigation of child abuse and clearly imputed to plaintiff the commission of a crime.  
Brown, 
158 Ill. App. 3d at 778.

In the present case, however, the statements in the Hurst article make no direct accusation of crime against plaintiffs. We find that, given the context of the article and the natural meaning of the language used, the statements involved in count III may be reasonably innocently construed as nondefamatory.  See 
Barry Harlem Corp. v. Kraff, 
273 Ill. App. 3d 388, 391, 652 N.E.2d 1077 (1995).

Moreover, plaintiffs are not identified by name in the article. Plaintiffs argue that the article was intended to be read in conjunction with the Jenner & Block report, which would make it "totally clear to any reader" that it was plaintiffs who were referred to in the Hurst article.  However, this assertion would preclude the publication from being considered defamatory 
per se
, as only statements that are defamatory 
per quod
 may rely on extrinsic facts.  See 
Schaffer, 
196 Ill. App. 3d at 731.  Furthermore, plaintiffs have failed to plead the special damages needed to state a claim for defamation 
per quod
.   

Applying the 
Milkovich 
test, we must consider whether a reasonable fact finder could conclude that the allegedly defamatory statement was an assertion of fact.  An analysis of the portions of the statement plaintiffs claim to be defamatory reveals no provable factual assertions.  As noted by the trial court, the article represents Hurst's opinion that broader issues were involved in the ESOP transaction than where covered in the Jenner & Block report.  We find that the article does not contain fact-based allegations of criminal activity capable of objectively being proven true or false. 

Count VII of plaintiffs' complaint alleges defamation in connection with an article written by defendant Baldwin in the publication Sound View, entitled "The Master Chairman - Our Imperial Leader."  The article, referring to plaintiffs as leaders of the MEC, states that "we now have before us evidence of collusion, conspiracies, and behavior much more onerous than anything imagined by [prior master executive chairmen]."  In the article, Baldwin questions whether the union got the most effective collective bargaining agreement, states that members should "question the motives" of plaintiffs Dubinsky and Hall and "whether they were entirely honorable."  The article does refer to the "Dubinsky/Hall/Goldstein conspiracy" and states that "some would prosecute them to the fullest extent of the law." 

The trial court determined that the statements contained in this article were capable of being reasonably innocently interpreted and constituted nonactionable opinion as they were not objectively verifiable so as to be factual in nature.  Plaintiffs contend the article imputes criminal conduct to them based on their participation in the events surrounding the ESOP transactions and only a strained interpretation of the article could result in an innocent construction.  

The innocent construction rule requires us to adopt an innocent construction of the allegedly defamatory statements if such an interpretation is reasonable.  
Chapski, 
92 Ill. 2d at 351.  The Baldwin article, while strongly worded, must be interpreted in context.  Baldwin focuses on what he perceives to be the negative direction that ALPA had taken under the leadership of plaintiffs, and references to "collusion" or "conspiracy" are not presented as actual violations of the law by plaintiffs.  Therefore, the article is subject to a reasonable nondefamatory construction.  Further, we agree with the trial court that the comments contained in the article are not objectively verifiable and cannot be interpreted as stating actual facts about plaintiffs.  
Milkovich, 
497 U.S. at 20, 111 L. Ed. 2d at 19, 110 S. Ct. at 2706.  We cannot find that the language of the article was sufficiently precise so as to be based on verifiable facts. 

Count XV alleges defamation in conjunction with another article written by defendant Baldwin entitled "The Scum Also Rises:  The Roger Hall Story," which appeared in a January 1995 ALPA newsletter.  The trial court upheld this count, finding that the statements at issue were not reasonably capable of innocent construction and were therefore actionable as defamation 
per se
.  Specifically, the trial court found that the language in the Baldwin newsletter plainly accused plaintiff Hall of criminal conduct, even suggesting that prison was appropriate for Hall and Goldstein.  Further, the court noted that the newsletter contained assertions of fact capable of being proven true or false and therefore did not constitute protected speech.  The newsletter states that Hall arranged to "pay up on a secret, illegal and wildly unethical success fee" to Goldstein.  In the article, Baldwin also alleges a "possibility of racketeering charges" in connection with the incident and a conspiracy by Hall to "misappropriate union funds."  Finally, Baldwin states that he hopes the situation "spells P-R-I-S-O-N for the so called leadership."

Plaintiffs argue that these words, when considered in context and given their natural and obvious meaning, cannot be innocently interpreted and impute the commission of a crime.  We agree, rejecting defendants' assertion that the newsletter is subject to a reasonable, nondefamatory construction.  Courts must interpret the allegedly defamatory words as they appear to have been used and according to the idea they were intended to convey to a reasonable reader:

"When a defamatory meaning was clearly intended and conveyed, this court will not strain to interpret allegedly defamatory words in their mildest and most inoffensive sense in order to hold them nonlibelous under the innocent construction rule."  
Bryson, 
174 Ill. 2d at 93.

In addition, the article clearly makes factual assertions regarding the employee purchase transaction, referring explicitly to criminal conduct, and cannot be considered nonactionable opinion. 
Milkovich, 
497 U.S. at 17-20, 111 L. Ed. 2d at 16-19, 110 S. Ct. at 2705-06.

Finally, we turn to count XVII of the complaint, in which plaintiff Dubinsky alleges defendant Richards defamed him by calling him a crook in front of approximately 30 or 40 United Airlines pilots and their wives.  The trial court found that the facts surrounding the statement "lead to the inescapable conclusion that Richards was accusing Dubinsky of criminal conduct" and upheld count XVII on this basis.  Defendants assert that the statement was not objectively verifiable and devoid of factual content. 

The case 
Piersall v. Sportsvision, 
230 Ill. App. 3d 503, 595 N.E.2d 103 (1992), is instructive.  In 
Piersall, 
the defendant was accused of calling the plaintiff, who was a well-known sports announcer, a liar.  The court held that the general statement that someone is a "liar," without being put in a context of specific facts, is merely opinion.  
Piersall, 
230 Ill. App. 3d at 510.  The court noted that in order to determine whether a statement is fact or opinion, a court must evaluate the totality of the circumstances and should consider whether the statement is capable of objective verification as true or false.  
Piersall, 
230 Ill. App. 3d at 510.

In the present case, Richards' statement that Dubinsky was a "crook" was not actionable because it was not made in any specific factual context.  One cannot rely on an assumption that those who heard the statement were completely apprised of all the developments in the ESOP controversy so as to create a definitive factual context for the use of the word "crook."  Based on the totality of the circumstances, we conclude that this general statement, in the absence of factual context, is a statement of opinion, not objectively verifiable and devoid of factual content.

To summarize, we hold that the allegations in counts I and XV of plaintiff's complaint are sufficient to state a cause of action for defamation 
per se
.  The statements and articles addressed within each of these counts fall within the class of statements deemed actionable as they impute the commission of a criminal offense.  Moreover, we are not persuaded that any of these statements are capable of an innocent construction that would remove them from the actionable 
per se
 category.  Finally, the statements may be reasonably interpreted as making factual assertions and therefore fall outside the protection of the first amendment.  

For the reasons articulated above, we affirm the trial court's decision upholding counts I and XV and dismissing counts III a
nd VII, and reverse its decision upholding count XVII.   

C.  False Light Invasion of Privacy 

We next consider whether counts II, IV, VIII, XVI, and XVIII adequately state a cause of action for false light invasion of privacy.  Counts VI, X, XII and XIV involve the republication of the above statements that we address below.

In 
Lovgren v. Citizens First National Bank, 
126 Ill. 2d 411, 534 N.E.2d 987 (1989), the court set forth the three elements necessary to state a cause of action for false light invasion of privacy.  
First, the allegations in the complaint must show the plaintiffs were placed in a false light before the public as a result of the defendants' actions.  Second, the court must determine whether a trier of fact could decide that the false light in which the plaintiffs were placed would be highly offensive to a reasonable person.  Finally, the plaintiffs must allege and prove that the defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false.  
Lovgren, 
126 Ill. 2d at 419-23; 
Kolegas, 
154 Ill. 2d at 17-18.

It has been suggested that although all defamation cases can be analyzed as false light cases, not all false light cases are defamation cases.  
Kirchner v. Greene, 
294 Ill. App. 3d 672, 682, 691 N.E.2d 107 (1998). However, in cases where both defamation and false light claims are applicable, the plaintiff can proceed under either theory, or both, although there is only one recovery for each instance of publicity.  Restatement (Second) of Torts §652E (1977).  

The tort of false light invasion of privacy protects one's interest in being let alone from false publicity.  
Aroonsakul v. Shannon, 
279 Ill. App. 3d 345, 350, 664 N.E.2d 1094 (1996).  This principle was recognized by the court in 
Lovgren 
when it indicated that it was the branch of the privacy tort involving publicity placing another in a false light, as provided for in  section 652E of the Restatement (Second) of Torts which it adopted:

"Our study of the Restatement approach and Prosser's commentary on false- light privacy reveals that the heart of this tort lies in the publicity, rather than in the invasion into the plaintiff's physical solitude or affairs upon which the tort of invasion into seclusion is based."  
Lovgren, 
126 Ill. 2d at 418-19.

The trial court dismissed all of the counts alleging false light invasion of privacy, concluding that because plaintiffs voluntarily assumed positions in the union that caused them to be involved in matters of vital interest to ALPA members, they could not be considered purely private individuals for purposes of this litigation and had no expectation of privacy on the matters in question.  However, as noted in 
Lovgren, 
in false light cases, it is not necessary to distinguish between private and public figures.  
Lovgren, 
126 Ill. 2d at 422.  Plaintiffs' involvement in public matters of vital interest to ALPA members did not automatically give the defendants the right to make or publish statements depicting plaintiffs in a false light.  See 
Kolegas, 
154 Ill. 2d at 18-19. 

With respect to counts II and XVI, we find plaintiffs have adequately stated a cause of action for false light invasion of privacy. Count II is based on the Hurst letter referenced in count I, and count XVI is based on the Baldwin "Scum Also Rises" newsletter referenced in count XV.  We have found count I and count XV properly state a claim for defamation 
per se
 for the reasons discussed previously.

Plaintiffs have adequately pled in counts II and XVI that they were placed in a false light before the public in that the respective statements served to falsely accuse plaintiffs of criminal conduct.  Second, each count alleges that the statements placed plaintiffs in a false light that would be highly offensive to a reasonable person.  We agree that a jury could find that being falsely accused of the criminal activity at issue here would be highly offensive to a reasonable person.  Finally, plaintiffs pled defendants knew the statements were false or acted with reckless disregard as to whether the statements were true or false, thus satisfying the actual malice standard.  Whether in fact defendants acted with actual malice remains a jury question.

We next turn to count IV, the false light invasion of privacy claim based on the Hurst "Sound Advice" article in which author Hurst urges union members to question their legal representation in the ESOP matter and states that the Justice Department should determine whether RICO or other federal laws should apply.  We find that the complaint fails to satisfy the first element necessary to plead a cause of action for false light.  Accepting the allegations in count IV as true, we cannot say the statements in the Hurst article place plaintiffs in a false light, but, rather, generally criticizes how the ESOP transaction was conducted.  Although the article does refer to possible "wrongdoing" under the RICO Act or other federal laws, no specific criminal allegations were made.  Because count IV fails to meet the first element necessary to state a claim for false light invasion of privacy, it was properly dismissed.  

Count VIII also asserts a false light invasion of privacy claim, based on the Baldwin "Imperial Leader" article.  However, we find that this count does not satisfy the first element necessary for a false light claim as it does not show that plaintiffs were placed in a false light before the public as a result of defendants' actions. The article criticizes the UAL-MEC's structure of leadership and leadership practices, and expresses concern about the "excesses of power" of the union's past leaders.  Though the article contains strong language critical of plaintiffs, the article does not contain any specific statements that cast plaintiffs themselves in a false light. Therefore, count VIII must fail.  

Finally, we turn to count XVIII, in which plaintiff Dubinsky alleges defendant Richards placed him in a false light by calling him a "crook" in front of 30 or 40 pilots and their wives.  Count XVIII fails to show how this statement placed plaintiff in a false light, as it constitutes mere name-calling, devoid of factual content.

 Based on the foregoing analysis, we reverse the trial court's decision dismissing counts II and XVI and find that counts II and XVI adequately allege the required elements of a false light invasion of privacy claim.  We affirm the trial court's decision regarding counts IV, VIII, and XVIII and find that plaintiffs have failed to state a claim for false light in those counts . 

D.  Uniform Single Publication Act

The trial court dismissed the defamation claims in counts V, IX, XI and XIII and the corresponding false light claims in counts VI, X, XII and XIV on the basis these claims violated the Uniform Single Publication Act (Act) (740 ILCS 165/1 (West 1994)).  The Act states as follows:

"No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one edition of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture.  Recovery in any action shall include all damages for any such tort suffered by plaintiff in all jurisdictions." 740 ILCS 165/1 (West 1994).

In 
Weber v. Cueto, 
253 Ill. App. 3d 509, 522, 624 N.E.2d 442 (1993), the court stated that the Act "prohibits more than one cause of action for the same means of publication, no matter how many times that publication is reproduced." 
 
In 
Weber, 
the plaintiff's original complaint involved the publication of an allegedly defamatory letter to prominent state and local officials, such as the chief judge and members of the Madison County Board, which the court held was privileged.  The plaintiff then filed a first amended complaint that alleged defamation when the same letter was republished in newspapers and disseminated to the public.  The court held that these constituted separate causes of action because the case did not involve "the same means of publication of the allegedly libelous words."  
Weber, 
253 Ill. App. 3d at 522.   

In 
Founding Church of Scientology v. American Medical Ass'n, 
60 Ill. App. 3d 586, 589, 377 N.E.2d 158 (1978), the court found that the subsequent distribution of existing copies of an original publication does not create a fresh cause of action.  
Founding Church 
involved an allegedly defamatory article published in the December 1968 issue of the American Medical Association (AMA) magazine.  The plaintiff alleged the AMA caused reprints and copies of the article to be delivered to three newspapers seven years after the original article was published.  The court held that the copies of the articles mailed by the AMA seven years after the initial publication were only copies and were incidental to the general publication of the original article, and they did not constitute a "republication" giving rise to a new cause of action.  
Founding Church, 
60 Ill. App. 3d at 589.    

The case 
Wathan v. Equitable Life Assurance Society, 
636 F. Supp. 1530 (C.D. Ill. 1986), provides
 
a detailed interpretation of the Act in the context of Illinois law.  The 
Wathan 
court noted that the central purpose of the Act was to "protect publishers and others involved in the communications industry from undue harassment by preventing a multitude of lawsuits based on one tortious act."  
Wathan, 
636 F. Supp. at 1534.  Citing the Illinois case 
Winrod v. Time, Inc., 
334 Ill. App. 59, 72, 78 N.E.2d 708 (1948), the court noted that the test in determining when the subsequent distribution of libelous material gives rise to a new action is whether a defendant consciously republishes the statement.  
Wathan, 
636 F. Supp. at 1532.  The court noted that the Act was not intended to apply to the causes of action of one plaintiff against two or more separate defendants, each of whom has published the same statement or taken part in the same publication.  
Wathan, 
636 F. Supp. at 1535.  The court found that the common law history of the Act indicated it was intended to limit a plaintiff to a single cause of action against one defendant who publishes a number of copies of a defamatory item, and has no application where someone other than the original publisher commits a separate tort by republishing the same item. 
Wathan, 
636 F. Supp. at 1535.  The 
Wathan 
court summarized the scope of the Act as follows:

"[The Act] does not bar a separate cause of action arising out of a single defamatory statement when (1) someone other than the original libeler consciously republishes the statement, and (2) the alleged republication is not incidental to a mass distribution of the statement." 
Wathan, 
636 F. Supp. at 1536.

Regarding application of the Act (740 ILCS 165/1 (West 1994)), we find the situation in this case to be factually similar to 
Wathan.   
Count V, which is a republication of the letter at issue in count I, was dismissed on the basis that republication of a statement that is not actionable cannot give rise to liability.  However, this  was an error by the trial court, as the court did determine the letter in count I was actionable and we have affirmed that decision for the reasons previously noted.  Count I alleges that Hurst published a letter to Holmes which was republished in Cook County and names Hurst and Holmes as defendants.  Count V alleges that Holmes published a letter to Osteboe attaching the Hurst letter from count I for distribution and publication to all members of the defendant UAL-MEC and to "Special Counsel" in Illinois and names Holmes and Osteboe as defendants.

As to defendant Osteboe named in count V, he is someone other than the original libelers Hurst and Holmes named in count I.  Under the 
Wathan 
analysis,a separate cause of action may be stated against an additional defendant for publication of the same defamatory material.  As to defendant Holmes, the Uniform Single Publication Act only prohibits separate causes of action against him for the same publication.  In count V, the cause of action is based on his communication which consisted of his own letter and the attached Hurst letter.  Holmes is subject to liability for the publication of his letter on the basis that, by it, he republished defamatory statements made by Hurst.  As acknowledged by plaintiffs, Holmes may be found liable for participating in the initial publication of the Hurst Letter or, in the alternative, for a subsequent republication of the Hurst Letter. Accordingly, we find that count V does constitute a separate cause of action and is not barred by the Uniform Single Publication Act.

Similarly, we uphold the false light claim asserted in count VI.  The false light claim in count VI alleges a republication of the Hurst letter, the same statement on which the false light claim in count II is based.  Applying the analysis used above to address the count V defamation claim, we find that the claim stated in count VI does constitute a separate cause of action and is not barred by the Act.  

In summary, we reverse the dismissal of counts V and VI, finding that they allege separate causes of action that are not barred by the Act.  Because a claim premised on the republication of a nonactionable statement cannot give rise to liability, we affirm the dismissal of defamation counts IX, XI and XIII, and affirm the dismissal of false light counts X, XII and XIV.

E.  Actual Malice Standard

We are also called upon to determine whether the constitutional actual malice standard, as defined in 
New York Times Co. v. Sullivan, 
376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964), applies to the defamation claims in the case at bar.  The trial court found, that, because plaintiffs' action does not involve a media defendant, it did not require the pleading of actual malice.  The court further found that because the matter could not be characterized as a labor dispute, actual malice was not required under 
Linn v. United Plant Guard Workers, 
383 U.S. 53, 15 L. Ed. 2d 582, 86 S. Ct. 657 (1966).  Finally, the court determined that a "conditional privilege" applied to the case at bar, providing a conditional defense to defamation absent a showing of actual malice on the part of plaintiffs.

We find that the actual malice standard should apply to the defamation counts because plaintiffs, as former chairmen of UAL-

MEC, assumed leadership positions in the union and constituted limited purpose public figures. Therefore, we find it unnecessary to address whether this matter constitutes a labor dispute for purposes of the actual malice standard. Similarly, we find it unnecessary to address the actual malice issue under the conditional privilege analysis relied upon by the trial court.

In 
Gertz v. Robert Welch, Inc., 
418 U.S. 323, 333, 41 L. Ed. 2d 789, 801, 94 S. Ct. 2997, 3004 (1974), the Supreme Court rejected an attempt to extend the actual malice standard to all matters of public concern regardless of the status of the person allegedly defamed. Rather, the Supreme Court held that the actual malice standard only applies to defamation plaintiffs who "assume[] roles of especial prominence in the affairs of society." 
Gertz, 
418 U.S. at 345, 41 L. Ed. 2d at 808, 94 S. Ct. at 3009. The Supreme Court then classified these individuals as public figures. The Court further recognized that certain individuals, by their status in society, are deemed public figures for all purposes, while others will become public figures only if they have "thrust[ed] themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." 
Gertz, 
418 U.S. at 345, 41 L. Ed. 2d at 808, 94 S. Ct. at 3009-10.   

Citing 
Gertz, 
the court in 
Kessler v. Zekman, 
250 Ill. App. 3d 172, 180, 620 N.E.2d 1249 (1993), subdivided public figures into two types: general purpose and limited purpose public figures. The court noted that general purpose public figures always must establish actual malice to prevail in a defamation action. The court further noted that limited purpose public figures need to establish actual malice only in defamation actions involving controversies in "which they have chosen to accept a leadership role." 
Kessler, 
250 Ill. App. 3d at 181. However, if the defamation action is unrelated to those controversies, the limited purpose public figure need not prove actual malice. 
Kessler, 
250 Ill. App. 3d at 181.

In this case, plaintiffs Dubinsky and Hall, both of whom held the position of master chairman, the highest ranking representative of the United pilots within ALPA are deemed limited purpose public figures.  First, the employee purchase of United Airlines constituted a "public controversy" from which an individual may be deemed a limited purpose public figure. The intended audience of the alleged defamatory materials were the 8,000 members of ALPA. See 
Korbar v. Hite, 
43 Ill. App. 3d 636, 357 N.E.2d 135 (1976). Second, the plaintiffs assumed leadership roles of persuasive power and influence in the UAL-MEC and thrust themselves into the forefront of the employee stock purchase of United Airlines in order to influence the resolution of the issues involved. Therefore, plaintiffs invited attention and comment on their official conduct and policies.

In the 
Korbar 
case, the president of an employees' credit union brought a defamation action against a local union, its president and a union newspaper based on allegedly defamatory statements published in the union newspaper.  The court held that while the plaintiff could not be deemed a public figure for all purposes, he could not use the protection afforded a private individual to insulate himself from such comment in the context of a union-related controversy.  
Korbar, 
43 Ill. App. 3d at 642.  The court also noted the significance of the fact that the allegedly defamatory statements were published in a union newspaper by a member of the credit union concerning a matter of general interest to the membership. 
Korbar, 
43 Ill. App. 3d at 642.

The present case is similar.  As elected officers of UAL-MEC, the governing board of ALPA, plaintiffs occupied leadership roles of persuasive power and influence with regard to the negotiations and eventual successful outcome of the employee stock purchase of United Airlines. Because plaintiffs were representatives of the union members at large, comment and criticism of their role in this process were certainly reasonable and to be expected.  Further, four of the five allegedly defamatory statements were published by union members in union periodicals circulated to union members who had a strong interest in the controversy. 

 Union officers are generally held to be public figures for purposes of union business where their activities place them in a controversy that invites scrutiny of their integrity, character and professional ability.  
Miles v. Perry, 
11 Conn. App. 584, 591-92, 529 A.2d 199, 204 (1987). Indeed, many courts have determined that union officers or officials constitute public figures and must show actual malice in defamation actions.  See generally 
Miller v. Transamerican Press, Inc., 
621 F.2d 721, 724 (5th Cir. 1980) (high ranking official of Teamsters union was a limited public figure);  
Guam Federation of Teachers., Local 1581 v. Ysrael, 
492 F.2d 438, 439 (9th Cir. 1974) (officers of teachers' union found to be public figures); 
Henry v. National Ass'n of Air Traffic Specialists, 
836 F. Supp. 1204, 1206 n.3 (D. Md. 1993) (elected union leaders of a 1,700-member union were public figures); 
Lins v. Evening News Ass'n, 
129 Mich. App. 419, 342 N.W.2d 573 (1983) (union officers were limited public figures).

Plaintiffs allege that the various statements of defendants accusing Dubinsky and Hall of criminal conduct were made with the knowledge of their falsity.  Taken together with the reasonable inferences from the allegations of the complaint, when read together with the related publications attached as exhibits, the complaint sufficiently pleads actual malice in each of the surviving counts.  
Mittelman, 
135 Ill. 2d at 235-38. 

In summary, for the foregoing reasons, we find plaintiffs were limited public figures and must allege defendants acted with actual malice in making the statements that are the subject of the defamation claims.  We note that plaintiffs acknowledge that the allegation of actual malice was inadvertently omitted from count XV, and we will allow plaintiffs to amend count XV as to this element. 

III. CONCLUSION

For the reasons outlined above, the judgment of the trial court is reversed in part and affirmed in part.  With regard to plaintiffs' defamation claims, we affirm the trial court's decision finding that counts I and XV state a cause of action under section 2-615.  We further affirm the trial court's dismissal of counts III and VII, finding that these counts do not adequately allege causes of action for defamation, and reverse the trial court's decision upholding count XVII. 

As for plaintiffs' false light invasion of privacy claims, we reverse the dismissal of counts II and XVI, finding they do adequately state claims for false light invasion of privacy.  Additionally, we affirm the dismissal of counts IV, VIII and XVIII and find that plaintiffs have failed to state a claim for false light invasion of privacy in these counts.   

We reverse the trial court's dismissal of counts V and VI, finding that these counts do constitute separate and distinct causes of action under the Uniform Single Publication Act.  Because a claim premised on the republication of a nonactionable statement cannot give rise to liability, we affirm the dismissal of defamation counts IX, XI and XIII, and affirm the dismissal of false light counts X, XII and XIV.

 Finally, we hold that plaintiffs constitute limited public figures for purposes of this controversy and thus the actual malice standard must apply.  This cause, affirmed in part and reversed in part, is remanded to the trial court for further proceedings consistent with this opinion.

Affirmed in part and reversed in part.

O'BRIEN, P.J., and GALLAGHER, J., concur.