Mahmut Karaduman, Appellant, v Newsday, Inc., et al.,
Respondents.

First Department, December 13, 1979

## APPEARANCES OF COUNSEL

*Thomas R. Newman* of counsel (*Mark L. Rosen* and *Leon Segan* with him on the briefs; *Segan, Culhane, Nemerov & Green, P.C.,* attorneys), for appellant.

*Andrew L. Hughes* of counsel (*Nina Shreve* with him on the brief; *Townley & Updike,* attorneys), for respondents.

## OPINION OF THE COURT

MARKEWICH, J.

This appeal involves a complaint charging libel. The offending text first appeared in a newspaper article and was then reworked into a book. Defendants-respondents include the publishers of the newspaper and those of the book, as well as investigative reporters and editors employed by the newspaper, and said to be responsible for the gathering of the information basic to the article, as well as for its metamorphosis into a book. A first cause of action bottomed directly on the original article, and dismissed for untimeliness, is not involved on this appeal. The second and third causes of action were dismissed by the order appealed from and are addressed solely to the book. Simply stated, the second cause charges all defendants except the book's publisher, defendant New American Library, with participation in its publication. The third cause deals with the actual publication of the allegedly libelous book and is leveled against defendant New American Library. Essentially, the ruling of Special Term on defendants' motion for summary judgment dismissing the complaint held that, the statutory limitation of time as to the original article having expired, defendant *Newsday* was not responsible in anywise for its republication. Further, that defendant New American Library might rely on the original publication to establish its own good faith in the republication after a year from publication had elapsed without a suit. We hold that, the defendants having effectively laid their responsibility for the

republication on the line by denial thereof and plaintiff having countered with evidence to show involvement of all defendants in the republication, there is an issue of fact on this score. We hold, further, as to good faith—for which read "responsible consideration for standards of information gathering and dissemination"—plaintiff has countered defendants' allegations of adherence to such standards sufficiently to raise still another issue of fact.

■ ■ Both article and book purport to describe what is a matter of great public concern, the international traffic in heroin; indeed, the book's title is "The Heroin Trail." Both writings reveal names of those said to be at the top of wholesale dealings in the drug. It places plaintiff, named specifically in a variant of the spelling used in the title of this case, in the highest echelon of this illicit business. Prior to the inception of new thought in the field of defamation, as set out in a long list of cases, commencing with *New York Times Co. v Sullivan* (376 US 254) and the most recent of which is *Greenberg v CBS, Inc.* (69 AD2d 693) statements such as this would have constituted actionable defamation per se, with recovery virtually assured. At present, however, there are road blocks on the way to success in the circumstances here found. Before examining these, we turn to certain points asserted by defendants which may be disposed of at once. Defendant *Newsday* denies any involvement in the republication, a separate defamation from the original article, but both defendants *Newsday* and New American Library are part of a publishing complex in one ownership. Additionally, *Newsday* and the individual investigative reporter and editor defendants are shown to have participated in one way or another in the furnishing and recasting of the original article for republication in book form. The extent of their involvement in the alleged vehicle for libel is at least a question of fact. Nor is the "single publication rule" (see *Dodd v Harper & Bros.,* 3 AD2d 548) here applicable; the book is, as merely casual scanning establishes, separate and distinct from the original article, and, beyond argument, a republication. So much for involvement of the parties, as well as whether the book is distinguishable from the article.

■ There is left for discussion only the claim of good faith by "verification of sources," most aptly described in the following excerpt: "[W]ithin the limits imposed by the Supreme Court where the content of the article is arguably within the

sphere of legitimate public concern, which is reasonably related to matters warranting public exposition, the party defamed may recover; however, to warrant such recovery he must establish, by a preponderance of the evidence, that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." (*Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, 199.)*

"Like the concept of malice, the *Chapadeau* standard [of whether there was or was not "gross irresponsibility"] is a legal measure, designed to be applied in a wide range of circumstances and evaluated by the reasonable individual." (*Greenberg v CBS, Inc.,* 69 AD2d 693, 710, *supra.)* There is no reason, nor have we found a holding otherwise, why that standard should not be applied, *mutatis mutandis,* to a book as well as to a newspaper. Indeed, the traditional rush and bustle which is a well-known aspect of journalism as practiced in a newspaper office is in direct contrast to the time available for research incidental to publication of a book and the better opportunity afforded by the latter to verify sources of information.

The applicable standard by which to measure the defendants' exercise of professional responsibility is that of the "reasonable individual." "[I]t should be noted that investigative reporting is high-risk journalism. The degree of care which determines the amount of a risk in such a venture lies exclusively within the control of those conducting and monitoring the investigation. In this case the decisions of defendants in their endeavor must be evaluated at a trial." (*Greenberg v CBS, Inc., supra,* at p 711.) Applying that rule to the circumstances here found, a trier of the fact must consider all surrounding circumstances, inclusive of opportunity to investigate all available sources of information. Unfortunately, as to one portion of the evidence on this subject, defendants have declined, on discovery, to reveal their sources on a claim of privilege. Having elected to justify their conduct, they may

---

* We note that Special Term commented that, as to the original newspaper article, "the year-long statute of limitations period for defamation passed without the accuracy of the material once being challenged by the institution of an action for libel, and the book challenged herein was not published until after the expiration of that one year period." This mere passage of time is not a substitute for actual careful verification of sources; a decision whether or not to sue must rest solely with the person defamed, who may well distinguish between the impact of a book and that of a newspaper article before deciding to go to court.

not conceal the basis for that justification *(Greenberg v CBS, Inc., supra,* at p 709). But, going even further, the record reveals that the very persons, Labernas, Erbug, and Aygun, Turkish police officials, who actually were named by defendants Greene, Payne, and Royce, as the sources of their information, and who are claimed to have been relied on for verification of the story about plaintiff, have denied in affidavits submitted in opposition to the motion for summary judgment that they ever gave such information to the defendants. This alone presents an issue of fact sufficient to justify denial of defendants' motion for summary judgment.

Accordingly, the order of Supreme Court, New York County (SCHWARTZ, J.), entered November 30, 1978, should be reversed, on the law, defendants-respondents' motion for summary judgment dismissing the complaint denied, and the complaint reinstated to the extent of the second and third causes of action therein set forth, with costs.

FEIN, J. P., SULLIVAN, SILVERMAN and Ross, JJ., concur.

Order, Supreme Court, New York County, entered on November 30, 1978, reversed, on the law, defendants-respondents' motion for summary judgment dismissing the complaint denied, and the complaint reinstated to the extent of the second and third causes of action therein set forth. Appellant shall recover of respondents $75 costs and disbursements of this appeal.