[Civ. No. 56558. Second Dist., Div. Four. July 17, 1980.]

IRVING A. KANAREK, Plaintiff and Appellant, v.
VINCENT T. BUGLIOSI et al., Defendants and Respondents.

**COUNSEL**

Lascher & Wilner and Edward L. Lascher for Plaintiff and Appellant.

Steinberg & Bugliosi, Robert K. Steinberg, Pillsbury, Madison & Sutro, Walter R. Allan, Jerome C. Dougherty and Donald J. Putterman-Crigger for Defendants and Respondents.

**OPINION**

**WOODS, J.**—On this appeal we consider the propriety of an order sustaining without leave to amend the demurrer to a complaint on the ground that the action is barred by the doctrine of res judicata. Plaintiff, Irving A. Kanarek, has appealed from the order dismissing his action following the sustaining of that demurrer. The action concerns allegedly libelous statements made by defendant, Vincent T. Bugliosi, concerning plaintiff, in defendant's book, "Helter Skelter." Codefendants are the coauthor and publishers of that book.

I

A brief history of the events leading up to this litigation is required before we can address the issues presented here. In 1970, defendant, Vincent T. Bugliosi, was assigned by the District Attorney of Los Angeles County to prosecute the murder charges against Charles Manson and several codefendants. Plaintiff Kanarek was hired by Charles Manson to represent him in that trial. In 1974, defendants caused to be published a work of purported nonfiction entitled "Helter Skelter" chronocling the crimes and the trial.

In September 1975, plaintiff filed a defamation action against defendants alleging that numerous references to plaintiff in said book were defamatory. That complaint referred to and incorporated by reference the entire recently published hardcover edition of the book. Respondent Bugliosi demurred to plaintiff's complaint, which demurrer was heard and argued on March 16, 1976. The court entered the following order: "General demurrers sustained. 45 days leave to amend; Thereafter; 45 days to plead. Grounds: Demurrer paragraph 1 through 5. [¶] Special demurrer off calendar." Thereafter, numerous documents were filed with respect to discovery matters and in an effort to set aside the court's ruling on the demurrer. The first amended complaint was not filed within the allowed time. Defendants' motion to dismiss the complaint for failure to amend within the time was granted on July 8, 1976, and plaintiff's action was ordered dismissed on that date. Plaintiff's subsequent motion to set aside the order of dismissal was denied October 1, 1976. Plaintiff appealed from that judgment of dismissal, but the appeal was subsequently dismissed for failure to post the fee for the clerk's transcript on appeal.

In the meantime, on September 17, 1976, plaintiff's complaint in the within action was instituted. That complaint, which was amended voluntarily on October 5, 1977, alleges that plaintiff was defamed in the paperback edition of "Helter Skelter," published in October 1975. Defendant Bugliosi's demurrer to that complaint was sustained with leave to amend.

Plaintiff's second amended complaint for libel was filed March 10, 1978.[1] Demurrers to that complaint were filed, alleging, inter alia, the

---

[1] Whenever reference is made in this opinion to plaintiff's first complaint, by that is meant the complaint in the first lawsuit based on the hardcover edition of the book. Reference to plaintiff's second complaint means the second amended complaint filed in the second lawsuit based on the paperback edition.

bar of res judicata and collateral estoppel. The court heard argument on those demurrers on September 15, 1978; the demurrers were sustained on the ground that the prior order of dismissal was res judicata. Plaintiff's action was dismissed as to all defendants, and this appeal ensued.

## II

Appellant contends that the court erred in ruling that the judgment in the first action was a bar to the commencement of the second action. In dismissing the second action, the court found that both the first and second complaints were based on identical passages in the book "Helter Skelter," which passages were alleged to be defamatory. The court said in its order: "There is no substantial difference in the two, although it is claimed that here the cause of action alleged is grounded on the paper back edition rather than the hard cover edition, a distinction without a substantial difference." The court concluded that the general demurrer to the first complaint was sustained on a substantive ground: "[T]he insufficiency of the referenced passages to constitute defamation." The order concluded: "[W]hat is alleged to have been defamatory is what was said in the book, the pleading of which has been held to be defective in substance to state a cause of action for libel. That judgment is *res judicata.*"

Appellant contends that the court erred in its ruling in two significant respects: (A) In failing to find that the publication of the paperback edition gave rise to a new and distinct cause of action; and (B) in finding that the dismissal of the first complaint was a dismissal on the merits, rather than a technical or procedural dismissal based on plaintiff's failure to amend his complaint within the time allowed.

## III

In 1955, California adopted the Uniform Single Publication Act, at Civil Code section 3425. Respondents contend that the language of section 3425.3 prohibits the institution of a new action based upon the paperback publication. That section provides in pertinent part as follows: "No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one issue of a newspaper or book or magazine. . . ."

■ At issue here is whether the republication of a hardcover book in paperback form is a new issue of that book so as to give rise to a new cause of action. No California case precisely on point has been discovered. But our study of the history of the statute and its purpose leads us to conclude that all copies of the hardbound first edition of the book gave rise to one cause of action; the republication of that book in paperback form is a new "issue." In *Belli* v. *Roberts Brothers Furs* (1966) 240 Cal.App.2d 284, 288 [49 Cal.Rptr. 625], the court explained: "The purpose of the statute is to abrogate the former rule, under which the sale of each copy of a newspaper or other publication containing libelous matter was deemed to give rise to a separate cause of action. [Citation.] The result of the former rule was to grant a litigant claiming to have been libeled, countless separate causes of action, together with virtual immunity from the bar of any statute of limitations."

The cases in California and elsewhere which have evaluated the Uniform Single Publication Act demonstrate that the act was not designed to give unending immunity for repeated publications of libelous matter. It was designed, however, to protect a publisher who prints numerous copies of libelous matter, which copies are then distributed over a substantial period of time. A new cause of action for libel does not arise each time a new reader purchases the material. The protection of the act is not extended, however, to situations where, knowing that matter is allegedly libelous, the defendant republishes. In *Church of Scientology of Cal.* v. *Dell Publishing Co., Inc.* (N.D.Cal. 1973) 362 F.Supp. 767, defendants published a book containing allegedly libelous material. After receipt of a letter of complaint from plaintiff, concerning the hardcover edition, defendants republished the book in identical, but paperback, form. The court found that evidence of the republication could be admissible on the issue of malice. (See also *Karaduman* v. *Newsday, Inc.* (1979) 71 App.Div.2d 411 [422 N.Y.S.2d 426, 427-428].)

In *Johnson* v. *Harcourt, Brace, Jovanovich, Inc.* (1974) 43 Cal. App.3d 880, 895-896 [118 Cal.Rptr. 370], the court noted, at footnote 14: "California has adopted the Uniform Single Publication Act, Civil Code section 3425.3,... Therefore, the cause of action for invasion of privacy accrued upon the initial distribution of the textbook. [Citation.] However, it should be pointed out that if defendants reprint the textbook they may cause the statute of limitations to start running again from the date of reprinting." (To the same effect see *Wheeler* v. *Dell Publishing Co.* (7th Cir. 1962) 300 F.2d 372; *Gregoire* v. *G. P. Putnam's Sons* (1948) 298 N.Y. 119 [81 N.E.2d 45].)

In the Restatement of Torts Second section 577A, in its comment on the subsection referring to the publication of a book, the authors observe: "[T]he single publication rule...does not include separate aggregate publications on different occasions.... In these cases the publication reaches a new group and the repetition justifies a new cause of action."

In this case, the book "Helter Skelter," although identical in form and content to the hardcover edition, was republished in paperback form. It was undoubtedly intended to and did reach a new group of readers. The filing of a new action for damages based on libel is not barred by the Uniform Single Publication Act.

## IV

Appellant argues quite convincingly that the first action was dismissed on procedural, rather than substantive grounds. The record supports this conclusion. It is clear that the *order of dismissal* of the first complaint was entered because plaintiff failed to amend within the time allowed. The respondents' motion to dismiss the complaint was based on appellant's failure to amend within the time granted by the court. In his motion to set aside the dismissal, appellant explained that the first amended complaint had been prepared, but not filed, because the parties were attempting to reach a settlement of the action. Respondents' attorney, in opposition to the motion, admits that some settlement negotiations were under way, but asserts that no assent was given to an extension of time within which to file the amended complaint. Appellant's first amended complaint was in fact filed on the date that the order of dismissal was granted. The declarations of the parties in support of, and opposition to, the motion to set aside the dismissal, are all devoted to whether, and to what extent, significant settlement negotiations were under way.

■ There is nothing in the record to reflect an intention on appellant's part to stand on his complaint. Rather, the failure to amend the complaint was possibly the result of carelessness, or a misunderstanding of the consequences of settlement proposals. In any event, it was not based on an assertion that the complaint did state a cause of action against respondents. Therefore, we agree with appellant's contention here that the order of dismissal was not an order based on the merits of

the cause of action, and it would therefore not be res judicata. The demurrer to the second complaint should not have been sustained on that ground.

## V

The issue thus presented is whether the order sustaining demurrer was an order on the merits of the first action, thus barring the second.  ▮  A final judgment on the merits between the same parties will bar the filing of a new action. (*Levy* v. *Cohen* (1977) 19 Cal.3d 165, 171 [137 Cal.Rptr. 162, 561 P.2d 252].) Whether a judgment based on the sustaining of a general demurrer is a judgment on the merits depends upon the facts of the specific case and the reason for the ruling.

▮  A judgment based upon the sustaining of a *special* demurrer for technical or formal defect is not on the merits and is not a bar to the filing of the new action. (*Goddard* v. *Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47, 51 [92 P.2d 801].)

On the other hand, it is generally held that a demurrer which is sustained for failure of the facts alleged to establish a cause of action, is a judgment on the merits. However, this is true only if the same facts are pleaded in the second action (*Goddard* v. *Security Title Ins. & Guar. Co., supra*, 14 Cal.2d at p. 52), or if, although different facts are pleaded, the new complaint contains the same defects as the former.

A case remarkably similar to the case at bar is *Keidatz* v. *Albany* (1952) 39 Cal.2d 826 [249 P.2d 264]. There defendant's demurrer to plaintiffs' second amended complaint for rescission was sustained with leave to amend. Plaintiffs failed to amend within the time allowed and judgment was entered for defendant. No appeal was taken from the judgment. Four months later, plaintiffs brought an action for damages for fraud. The trial court granted defendant's motion for summary judgment on the basis of res judicata. The Supreme Court stated at page 828 that judgment entered after a general demurrer has been sustained "is a judgment on the merits to the extent that it adjudicates that the facts alleged do not constitute a cause of action, and will, accordingly, be a bar to a subsequent action alleging the same facts. [Citations.] Moreover, even though different facts may be alleged in the second action, if the demurrer was sustained in the first action on a

ground equally applicable to the second, the former judgment will also be a bar. [Citations.] If, on the other hand, new or additional facts are alleged that cure the defects in the original pleading, it is settled that the former judgment is not a bar to the subsequent action whether or not the plaintiff had an opportunity to amend his complaint."

The only distinction between that case and the one before us is that there, the plaintiff failed to appeal from the judgment of dismissal and here, the plaintiff failed to perfect his appeal. This is a distinction without any substantive difference. In both events, the judgments became final for purposes of res judicata. Thus, we are instructed by *Keidatz* that we must evaluate the second complaint to determine whether new or additional facts are alleged which cure the defects in the original pleading. If they are, the order of dismissal must be reversed; if the new complaint demonstrates the same infirmities present in the first complaint, the order of dismissal must be affirmed. (See *Crowley* v. *Modern Faucet Mfg. Co.* (1955) 44 Cal.2d 321, 323 [282 P.2d 33]; *See* v. *Joughin* (1941) 18 Cal.2d 603, 606 [116 P.2d 777].)

## VI

Defendants' demurrer to the complaint in the first action alleged that plaintiff's complaint failed to state facts sufficient to constitute a cause of action for the following reasons: (1) No special damages were pleaded; (2) The innuendo requires the interpretation of a meaning far too broad, which cannot reasonably be inferred from the words used; and (3) Reports of judicial proceedings are absolutely privileged.

The trial judge sustained the demurrer, with leave to amend, on the ground that the first complaint, in all five counts, failed to state facts sufficient to constitute a cause of action against defendants. (The special demurrers filed by respondents were not reached by the trial court, but were taken off calendar at the time the general demurrers were sustained.)

The trial judge, in holding that the second complaint was barred by the doctrine of res judicata, stated in his order: "The basis of the general demurrer was that the language pleaded was not libelous, that the innuendo and inducement pleaded were broader than the words permit ...it is clear that the general demurrer was sustained on substantive

grounds—the insufficiency of the referenced passages to constitute defamation." We do not agree with the trial judge's analysis of the basis for the prior ruling on demurrer. The three grounds enumerated hereinabove did not include the ground that the referenced passages are insufficient to constitute defamation. Therefore, respondents' reliance on the lower court's evaluation of the order sustaining demurrer is misplaced.

The trial court's cryptic order was, "General demurrers sustained...." The trial court did not explain on which of the three foregoing grounds it relied in reaching its conclusion that the general demurrer should be sustained. We must, therefore, determine whether the second complaint states additional facts which cure any of the alleged defects in the first complaint.

*Special Damages*

The pleading requirements in an action for libel are set out at Civil Code section 45a. That section defines libel on its face, or libel per se, as a statement which is defamatory of the plaintiff without the necessity of explanatory matter. The section then provides: "Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof." In Civil Code section 48a, special damages are defined as: "All damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other."

It is unnecessary for this court to determine whether any of the alleged defamatory statements set out in plaintiff's complaint would constitute libel per se. In his second complaint, plaintiff has in fact alleged items of special damage. At paragraph 17, plaintiff alleges that as a result of the defamation, "[P]laintiff has lost clients and there has been a sharp decline in the number of new clients normally to be expected by plaintiff and plaintiff's ability and eligibility to...attain public office, including but not limited to elevation to membership in the judiciary, has been impaired. Plaintiff does not at this time know the exact extent of pecuniary loss resulting from the foregoing, but is informed and believes, and on such information and belief alleges, that said loss is a continuing one, and the amount of said loss will be in the

sum of $10,000,000.00 or more; and plaintiff prays leave of Court to amend this allegation to insert the true amount of said loss when the same becomes known to him."

A very similar pleading was found sufficient to constitute a pleading of special damage in *MacLeod* v. *Tribune Publishing Co.* (1959) 52 Cal.2d 536, 548 [343 P.2d 36], where the court said: "Plaintiff alleged that as a result of the libel he 'has suffered pecuniary loss in his profession as a dentist' in that an 'unusually large percentage of old and established patients have been cancelling appointments,' and there 'has been a sharp decline in the number of new patients normally to be expected. Plaintiff does not at this time know the exact extent of pecuniary loss resulting from the foregoing, but is informed and believes, and therefore alleges, that said loss is a continuing one, and that the amount of said loss will be in the sum of $5,000.00 or more; . . .' These allegations are sufficient. The losses stated are included in the statutory definition, they are described with sufficient particularity to enable defendant to prepare its defense, and under the circumstances stated the extent of the loss may be alleged on information and belief. [Citation.]" (Cf. *Forsher* v. *Bugliosi* (1980) 26 Cal.3d 792, 807 [163 Cal.Rptr. 628, 608 P.2d 716].)

Plaintiff's pleading of a reduction in the number of new clients and a loss of clients is a sufficient pleading of special damages for purposes of Civil Code section 48a. Therefore, this ground of defendants' demurrer to the first complaint would not be sustained against the second complaint.

The first complaint alleges damages only in the most general terms. This alone could have been the legal basis of the order sustaining the demurrer to the libel count.

In view of the uncertainty whether the 1975 ruling was based on anything else, it was error to sustain the demurrer to the current complaint.

## VII

A new cause of action has been stated in the second complaint. Therefore, the judgment of dismissal is not a bar to the filing of the second action; the merits of the plaintiff's case, as set out in the second complaint, were not heard and decided in the first action.

The judgment of dismissal is reversed, and the trial court is directed to vacate its order sustaining defendants' demurrer and to enter instead an order overruling the demurrer.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied August 7, 1980, and respondents' petition for a hearing by the Supreme Court was denied October 3, 1980.