Filed 2/28/22  Jones v. Reekes CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RICHARD JONES, et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>CONNIE REEKES,<br><br>    Defendant and Respondent. | F082499<br><br>(Super. Ct. No. BCV-20-102526)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  David R. Lampe, Judge.

Parker Mills, David E. Parker and Steven S. Wang for Plaintiffs and Appellants.

Ganong Law and Philip W. Ganong for Defendant and Respondent.

-ooOoo-

Plaintiffs Richard Jones and his businesses Preferred Towing Service, LLC and Fast Response Security, Inc. (collectively Jones) appeal from the trial court's order granting a special anti-strategic lawsuit against public participation motion to strike pursuant to Code of Civil Procedure section 425.16 ("anti-SLAPP motion") in favor of defendant Connie Reekes.  Reekes made numerous Facebook posts critical of Jones and his businesses.  Jones sued Reekes for defamation, and in response Reekes filed her anti-

SLAPP motion against Jones. Jones claims the trial court erred in its determination that Jones's defamation claims against Reekes were time-barred, having been posted to the internet website in question more than one year prior to the commencement of Jones's defamation action. Jones alleges the discovery rule and the republication rule apply and delayed the accrual of his defamation cause of action until June 2020 when a third party showed him saved screenshots of posts.

After independently reviewing the record, we disagree with Jones and therefore affirm the judgment.

**FACTS**

Jones operates several businesses in California City, including Preferred Towing Service, LLC (a towing company) and Fast Response Security, Inc. (a private security services company). Jones's business partner Amanda Adolf administered a Facebook site entitled "Eyes on You," which apparently focused on matters of public interest within California City.

In early 2017, Reekes began posting opinions on the Facebook page Adolf administered. Reekes also contributed to a Facebook site parodying "Eyes on You," entitled "Eyes on Ewe," which also profiled matters of public interest within California City, but from a predictably different point of view. "Eyes on Ewe" was started by Jaymes Gordon, a California City resident. The comments in question criticizing Jones and alleging that Jones was involved in political corruption and control of the city leaders and police in California City appear to have been posted before May 2019 on "Eyes on Ewe." Reekes claimed the only place she posted any of the comments at issue was on the "Eyes on Ewe" Facebook account. Gordon shut down the "Eyes on Ewe" Facebook public account on or about May 12, 2019, as part of a small claims case settlement. With the closure and deletion of "Eyes on Ewe," Reekes's comments regarding Jones were likewise deleted, and were not publicly accessible thereafter.

2.

According to Jones (and Adolf), Reekes blocked them from accessing Reekes's Facebook postings (regardless of site) beginning in early 2017. Jones and Adolf discovered Reekes's pre-May 2019 postings on "Eyes on Ewe" regarding Jones and his business interests in June 2020. In early to mid-June 2020, "several customers" of one of Jones's businesses asked Adolf questions about statements attributed to Reekes in Facebook pages, regarding Jones and his businesses' purported involvement in California City politics. In response, Adolf contacted a friend, Carla Conry, who had been monitoring the "Eyes on Ewe" Facebook page for defamatory comments, and asked her if she had seen any comments by Reekes about Jones or Adolf on any Facebook pages. Conry sent Adolf screenshot images from "hundreds of Facebook posts and comments made by Ms. Reekes in the 'Eyes on Ewe' and 'The Real California City News' Facebook pages." Adolf then shared these screenshots with Jones.

## PROCEEDINGS

On October 28, 2020, Jones sued Reekes for one cause of action for defamation. The complaint alleged that Reekes made "numerous" defamatory statements concerning Jones in various posts and comments made on "their Facebook page" all within the year prior to the filing of the complaint. Specifically, Jones alleged Reekes accused Jones "of paying bribes to city officials, including city councilmembers and the police chief, to obtain an advantageous business relationship with the city." Jones's complaint also alleged Reekes published statements in Facebook posts falsely accusing Jones of conspiring with the chief of police of California City and his brother to steal furniture owned by the city. Jones further alleged that those who viewed Reekes's Facebook posts "reasonably understood the statements to mean that [Jones] had committed crimes, including bribery of government officials and criminal conspiracy within the meaning of the California Penal Code." Jones claimed the statements in question were demonstrably false, because Jones "never gave or offered to give money or something of value to California City officials, including its councilmembers or the Chief of Police, with an

3.

intent to buy favors or obtain an advantageous business relationship with the city; [Jones] never hired or employed the brother of the then Chief of Police; and [Jones] never stole or conspired with others to steal, city-owned property, including desks." Jones additionally alleged that Reekes "failed to use reasonable care to determine the truth or falsity of the statements made" in the Facebook posts, and "acted recklessly and maliciously." The complaint included no exhibits, such as screenshots of Reekes's postings on the "Eyes on Ewe" Facebook page (or any other Facebook page), though it did quote thirteen alleged examples verbatim. Jones's complaint did not provide any URL listings for any websites it alleged Reekes's statements were posted on, nor any specific dates it alleged the statements were posted.

Reekes filed a general denial in December 2020. Among the affirmative defenses Reekes raised was that the publications complained of pertained to a matter of public concern, and that Reekes was not negligent in publishing the statements. As additional affirmative defenses, Reekes alleged that the statements complained of were published more than one year prior to the filing of Jones's October 2020 complaint and that the Facebook page where the allegedly defamatory statements were published had been taken down and no longer existed more than one year before the filing of Jones's complaint. Specifically, Reekes compared the alleged defamatory statements referenced in an October 8, 2020 cease and desist letter Reekes received from Jones's attorney with Reekes's acknowledged postings on the "Eyes on Ewe" Facebook account, and determined that all of the statements were taken from Reekes's "Eyes on Ewe" postings. Reekes specifically denied posting or republishing any of the statements Jones complained of on any Facebook site other than "Eyes on Ewe."

In December 2020, Reekes also brought an anti-SLAPP special motion to strike Jones's complaint, pursuant to Code of Civil Procedure section 425.16. Reekes's anti-SLAPP motion challenged the allegations in Jones's complaint as time-barred by the applicable one-year statute of limitations, calculated from the first posting of the alleged

4.

defamatory publication under the "single-publication" rule. Reekes contended the "Eyes on Ewe" Facebook page was deleted on May 12, 2019, some seventeen months before Jones filed his defamation suit against Reekes. Moreover, Reekes asserted that there had been no republication event for purposes of California law in the intervening time. Reekes also alleged that the "Eyes on Ewe" Facebook postings all involved matters of public interest (specifically, influence-peddling within the California City city council and police department).

In Jones's opposition to the motion, Jones conceded the statements in question constituted free speech in connection with an issue of public interest, but alleged the statute had been tolled by Reekes's blockage of Jones from her personal Facebook account. In her reply to Jones's opposition, Reekes stated that Jones was not prevented from seeing the comments using any other Facebook account. Reekes further alleged that because Jones's close friend Conry shared Reekes's Facebook comments, Jones had a reasonable opportunity to have discovered them in a timely fashion.

On January 28, 2021, the trial court held a hearing on Reekes's anti-SLAPP motion. Jones argued the initial set of statements was blocked by Reekes so that Jones could not discover them, warranting utilization of the delayed discovery rule. Jones also alleged that there was a second, more recent set of defamatory Facebook postings made by Reekes in 2020. This second set of postings was allegedly made on a Facebook page called "The Real California City News." Jones claimed Reekes made no untimeliness arguments with respect to the second set of postings.

The trial court granted Reekes's anti-SLAPP motion, finding that Reekes met her burden of establishing that the statements forming the basis of Jones's defamation claim fell within the purview of Code of Civil Procedure section 425.16. The trial court also found Jones's claim time-barred because Reekes's statements had been posted to the "Eyes on Ewe" Facebook page more than one year prior to the filing of Jones's complaint, and it therefore held that Jones had not met his burden of demonstrating a

5.

probability of prevailing on his claim. The trial court rejected Jones's assertions that a second set of defamatory statements had been posted on "The Real California City News" Facebook page by Reekes in 2020, finding a lack of specificity in the complaint regarding such allegations, which took any such allegations outside of the purview of the anti-SLAPP motion.

On February 8, 2021, the court filed its order granting Reekes's anti-SLAPP motion. On March 9, 2021, Jones timely appealed the order granting the anti-SLAPP motion.

## DISCUSSION

I.     BASIC LEGAL PRINCIPLES

A.     <u>Anti-SLAPP Motions</u>

1.     *General background*

The California Legislature enacted Code of Civil Procedure[1] section 425.16 ("anti-SLAPP statute") in response to "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) Section 425.16 states in pertinent part: "(b)(1) A cause of action against a person arising from any act of that person in furtherance of a person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

For a trial court, anti-SLAPP motions require a two-part analysis: (1) the defendant bringing the anti-SLAPP motion must make a prima facie showing that the suit

---

[1] All subsequent statutory references are to the Code of Civil Procedure unless otherwise stated.

6.

arises from an act in furtherance of the defendant's rights of petition or free speech in connection with a public issue (i.e., the challenged cause of action is one arising from protected activity enumerated in the statute); (2) once such a showing is made, the burden shifts to plaintiff to demonstrate the probability of prevailing on the merits of the challenged claims. (§ 425.16; *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 420.)

Regarding the first prong of the test, the statute enumerates the acts that are protected, including: "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) The determination of whether a particular subject is a "public issue" or an "issue of public interest" must be "construed broadly." (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 464 (*Hecimovich*).

Regarding the second prong of the test, the statute establishes a summary judgment-like procedure by which the trial court evaluates the merits of the defamation suit at an early state of its litigation. (*Hecimovich*, *supra*, 203 Cal.App.4th at p. 463.) By its own terms, the statute "shall be construed broadly." (§ 425.16, subd. (a).) "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

2.     *Statute of Limitations*

Section 340 establishes a one-year statute of limitations for defamation actions, which commences at the time the statement in question is first published. (§ 340, subd. (c); *Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1246 (*Shively*).) "[F]or defamation this occurs, generally speaking, when the defendant communicates the defamatory statement to others." (*Shively*, *supra*, at p. 1237.) "In general, each time the

defamatory statement is communicated to a third person who understands its defamatory meaning as applied to the plaintiff, the statement is said to have been 'published,' although a written dissemination, as suggested by the common meaning of that term, is not required." (*Id.* at p. 1242.) The one-year statute begins to run whether or not a prospective plaintiff is aware that their cause of action has accrued. (*Id.* at pp. 1245—1246.) Tolling of the statute of limitations occurs only if there is fraudulent concealment, or where a plaintiff could not reasonably have discovered the facts giving rise to the claim. (*Id.* at p. 1237 ["[t]his so-called discovery rule has been applied to defamation actions in limited circumstances when the defamatory statement is made is secret or is inherently undiscoverable"].)

### 3. *Single Publication Rule*

In order to ameliorate the difficulties created by the common law rule that each communication of a defamatory remark to a new audience constituted a separate "publication" giving rise to a separate cause of action for defamation, "courts fashioned what became known as the single-publication rule, holding that, for any single edition of a newspaper or book, there was but a single potential action for a defamatory statement contained in the newspaper or book, no matter how many copies of the newspaper or book were distributed.]" (*Shively*, *supra*, 31 Cal.4th at p. 1245.)

California has adopted the Uniform Single Publication Act codification of the single-publication rule in Civil Code section 3425.3. (*Shively*, *supra*, 31 Cal.4th at p. 1246.) "Under the single-publication rule, with respect to the statute of limitations, publication generally is said to occur on the 'first general distribution of the publication to the public.'" (*Id.* at p. 1245.) "Under this rule, the cause of action accrues and the period of limitations commences, *regardless* of when the plaintiff secured a copy or became aware of the publication." (*Id.* at pp. 1245—1246.)

"Inquiry into whether delay in discovering the publication was reasonable has not been permitted for publications governed by the single-publication rule." (*Shively*, *supra*,

31 Cal.4th at p. 1251.)  The discovery rule, in other words, does not apply to delay the accrual of a cause of action for a defamation contained in a publication subject to the single-publication rule.  (*Hebrew Academy of San Francisco v. Goldman* (2007) 42 Cal.4th 883, 887 (*Goldman*).)

B.       Standard of Review

"The questions of whether the action is a SLAPP suit and whether the plaintiff has shown a probability of prevailing are reviewed independently on appeal."  (*Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 480 (*Grenier*).)

II.       MERITS OF THE APPEAL

A.       Contentions of the Parties

Jones contends that the trial court abused its discretion in granting Reekes's anti-SLAPP motion to strike, and that the trial court's finding that Jones's complaint was likely time-barred was in error.

B.       Applicable Legal Principles

*1.       Issue One*

Is Jones's defamation claim over Reekes's internet postings governed by the single publication rule (Civ. Code, § 3425.3)?  Specifically, do Reekes's republished defamatory posts and comments concerning Jones on a different Facebook page within a year of the filing of Jones's complaint restart the clock on the statute of limitations?  Relatedly, does the fact that someone took a "screenshot" of the alleged defamatory comment[s] and distributed it constitute a "republication" such as would restart the statute of limitations anew, assuming no substantive alteration of the comments occurred?

*2.       Issue Two*

Should the equitable "discovery rule" be applied to an internet publication such as Reekes's internet postings to delay the accrual of a cause of action for defamation, or are

9.

Jones's claims arising out of Reekes's internet postings time-barred pursuant to Code of Civil Procedure section 340?

C.    Analysis

Defamation is a reputational injury, occurring via libel or slander.  (Civ. Code, § 44.)  Generally speaking (excepting certain qualifications that are not applicable here), "a written communication that is false, that is not protected by any privilege, and that exposes a person to contempt or ridicule or certain other reputational injuries, constitutes libel."  (*Shively*, *supra*, 31 Cal.4th at p. 1242; Civ. Code, § 45.)

Jones concedes that Reekes's "Eyes on Ewe" postings regarding Jones and his business interests "constitute free speech under the U.S. or the California Constitution in connection with an issue of public interest, thereby satisfying the first prong of the anti-SLAPP analysis."  By Jones's own admission, then, Reekes's Facebook postings fall within the ambit of section 425.16.  We therefore affirm the trial court's conclusion on this threshold point.

Regarding the second prong of the anti-SLAPP analysis (the plaintiff's likelihood of success), "the plaintiff need not produce evidence that he or she can recover on every possible point urged.  It is enough that the plaintiff demonstrates that the suit is *viable*, so that the court should deny the special motion to strike and allow the case to go forward." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 905, emphasis added.)  In this case, it is apparent that the statements Jones complains of were published more than one year prior to the initiation of Jones's legal complaint regarding them, and that the single-publication rule applies in such a way as to make the discovery rule inapplicable to Jones's claims. Consequently, we conclude that Jones's claim of defamation against Reekes is time-barred, and therefore not viable, and that the trial court was correct to so hold in granting Reekes's anti-SLAPP motion.

## 1. *Single-Publication Rule*

The single-publication rule establishes an exception to the general rule that when a defamer republishes or repeats a defamatory statement to a new audience, each such instance gives rise to a new cause of action for defamation. (*Goldman*, *supra*, 42 Cal.4th at p. 891; *Shively*, *supra*, 31 Cal.4th at p. 1243.)

Under the single-publication rule, the statute of limitations on a cause of action for defamation based upon a written statement runs from the date the statement is "first generally distributed to the public, regardless of the date on which the plaintiff actually learned of the existence of the [publication] and read its contents." (*Shively*, *supra*, 31 Cal.4th at p. 1237.) Moreover, "the discovery rule does not apply to delay the accrual of a cause of action for defamation contained in such a publication." (*Ibid.*) The single-publication rule "applies without limitation to all publications," including those that are not widely distributed to the general public. (*Goldman*, *supra*, 42 Cal.4th at pp. 887, 893.) Thus, even if access to "Eyes on Ewe" was limited (to those who subscribed to that Facebook account), Reekes's postings to that Facebook page constituted a "publication" for purposes of the single-publication rule. Reekes's last posting on "Eyes on Ewe" was no later than May 12, 2019, the date on which that Facebook page was taken down.

Jones's reliance on *Tamkin v. CBS Broadcasting, Inc.* (2011) 193 Cal.App.4th 133 (*Tamkin*) and *McKinney v. County of Santa Clara* (1980) 110 Cal.App.3d 787 (*McKinney*) for the blanket proposition that wherever republication reaches a new entity or person, repetition justifies a new cause of action is misplaced. *Tamkin* did cite *Shively* in support of the principle that " '[i]n general, each time the defamatory statement is communicated to a third person who understands its defamatory meaning as applied to the plaintiff, the statement is said to have been 'published ….' " (*Tamkin*, *supra*, at pp. 145—146.) However, *Tamkin*'s articulation of that principle was not absolute; by its very terms, it was a "general" proposition. Exceptions exist, and as will be explained, apply on the facts of this case.

11.

*McKinney*'s contribution to defamation jurisprudence is its holding that the originator of a defamatory statement can be "liable for damages caused by the disclosure of the contents of the defamatory statement by the person defamed where such disclosure is the natural and probable consequence of the originator's actions." (*McKinney*, *supra*, at p. 796.) *McKinney* noted this exception is applicable in two different contexts: first, "where the originator of the defamatory statement has reason to believe a letter addressed and sent to the defamed containing a libel will fall into the hands of a third party *before* the defamed reads it or is informed of its contents," and second, "where the originator of the defamatory statement has reason to believe that the person defamed will be under a strong compulsion to disclose the contents of the defamatory statement to a third person *after* he has read it or been informed of its contents." (*Id.* at p. 796.) Neither of these circumstances applies in this case, and nothing in the *Tamkin* or *McKinney* decisions established an iron-clad rule that any repetition of a statement, under any and all circumstances, constitutes a republication of the statement for purposes of the single-publication rule.

Jones's reliance on *Kanarek v. Bugliosi* (1980) 108 Cal.App.3d 327, 332 (*Kanarek*) and *Traditional Cat Assn., Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 395 (*Gilbreath*) for the proposition that every republication of a defamatory statement starts the statute of limitations anew is likewise misplaced.

*Kanarek* involved allegedly defamatory statements about Kanarek contained in a *hardback* book written by Bugliosi. (*Kanarek*, *supra*, 108 Cal.App.3d at p. 329.) Bugliosi prevailed on a demurrer, and Kanarek did not amend his complaint within the statutory time limit. (*Id.* at p. 330.) Kanarek then filed a new action for libel, on the basis that the publication of a *paperback* edition of Bugliosi's book had subsequently been published, identical in form and content to the hardback edition, and the inclusion of the identical passages in the paperback edition of the book that had been the basis of Kanarek's original defamation action against Bugliosi constituted republication of those

same allegedly defamatory statements. (*Ibid.*) The *Kanarek* court agreed, and held that for purposes of Civil Code section 3425.3, the promulgation of a paperback edition of a book constituted a republication of that book's original hardback edition, intended to reach a new group of readers. (*Id.* at p. 333.) Thus, the Uniform Single Publication Act did not bar the filing of a new action for damages based on libel for the paperback edition. (*Ibid.*) For reasons explained below, however, Carla Conry's provision of Reekes's "Eyes on Ewe" postings to Adolf are not equivalent to a publishing house's release of a paperback edition of a hardback title.

*Gilbreath* held that the single-publication rule applies to statements published on websites. (*Gilbreath*, *supra*, 118 Cal.App.4th at p. 395.) *Gilbreath* also held that a meritorious statute of limitations defense will support an anti-SLAPP motion to strike. (*Id.* at p. 397.) Both of those holdings are relevant to this case. On the subject of republication, *Gilbreath* stated: "the need to protect Web publishers from almost perpetual liability for statements they make available to hundreds of millions of people who have access to the Internet is greater even than the need to protect the publishers of conventional hard copy newspapers, magazines and books. Importantly, the interests in free expression, which the court in *Firth v. State* [(Ct.App.2002) 98 N.Y.2d 365, 747 N.Y.S.2d 69] found were worthy of protection by application of the single-publication rule to Web pages, are the very same interests which the court in *Shively*[, *supra,* 31 Cal.4th 1230] relied upon in rejecting the notion the single-publication rule should be subject to any discovery exception." (*Gilbreath*, *supra*, at p. 404.) Further, *Gilbreath* articulated conclusions that have resonance in this case: "[i]n opposing the motion to strike, plaintiffs did not offer any evidence which contradicted [defendant's] declaration or provide admissible evidence that the statements on the Web site had been republished in other formats in the year preceding the filing of their complaint." (*Ibid.*) As will also be explained below, these are nearly identical facts to the instant case, and call for a similar conclusion.

13.

### a. Carla Conry's provision of Reekes's "Eyes on Ewe" postings to Adolf

"In general, the repetition by a new party of another person's earlier defamatory remark also gives rise to a separate cause of action for defamation against the *original defamer*, when the repetition was reasonably foreseeable." (*Shively*, *supra*, 31 Cal.4th at p. 1243.) "It is the foreseeable subsequent *repetition* of the remark that constitutes publication and an actionable wrong in this situation, even though it is the original author of the remark who is being held accountable." (*Ibid.*)

Carla Conry's showing Reekes's previous (and deleted) "Eyes on Ewe" postings to Adolf did not constitute a republication. It was not reasonably foreseeable and was not directed to the public generally. As such, this case differs from *Schneider v. United Airlines, Inc.* (1989) 208 Cal.App.3d 71 (*Schneider*), in which United Airlines and another company were held potentially liable for the republication of an allegedly defamatory statement by conveying the information in question to a credit reporting agency. (*Id.* at pp. 75—78.) In *Schneider*, the information in question was given by its originators (United Airlines) to TRW Credit Data (TRW), an agency charged with republishing that information in response to specific inquiries. (*Ibid.*) TRW was held to have republished the information in question by transmitting it to Union Bank in response to a credit check Union Bank was running on Schneider. (*Id.* at p. 74.)

By contrast, in this case, Reekes herself did not explicitly provide the information directly to Conry; Conry culled the statements from the "Eyes on Ewe" website, then provided them only to Adolf at her request. Unlike United Airlines in *Schneider*, *supra,* 208 Cal.App.3d 71, there is no evidence that Reekes had any foresight that Conry (or anyone else in particular) would privately send Adolf screenshots of Reekes's "Eyes on Ewe" postings, or that Adolf would in turn provide them to Jones. Moreover, Conry's provision to Adolf of the screenshots did not make the information accessible to the general public. "Eyes on Ewe" was not apparently altered after it was shut down in May

14.

2019. Adolf's showing to Jones Conry's screenshots of pre-June 2020 postings on "Eyes on Ewe" were likewise not a new "publication," because the postings were not shown to the general public, but only to Jones. Furthermore, Jones suffered no injury by virtue of Conry's provision of the screenshots to Adolf, nor Adolf's provision of the screenshots to Jones. Jones merely obtained information which he himself had requested, and which was not disseminated to any other person. These facts are dissimilar to the facts in *Schneider*, where TRW's provision of the statements in question to Union Bank resulted in Schneider being denied a check guarantee card by Union Bank. (*Id.* at p. 74.)

b. <u>Alleged republication or new publication by Reekes herself</u>

Nor is there any persuasive evidence in the record indicating Reekes republished the postings in question in other formats in the year before Jones filed his complaint against her. Jones claims that some of Reekes's posts and comments in "The Real California City News" were made in 2020 and constituted republications of Reekes's original allegedly defamatory posts and comments. However, the alleged republications differ from the claimed original statements and do not appear to be literal republications. Moreover, Jones's January 13, 2021 supporting declaration regarding both sets of Reekes's postings merely states that Jones viewed the screenshot images in question in late June 2020, not definitively that Reekes published the posts at that time. Furthermore, neither set of screenshots proffered by Jones contains a year time stamp, only the occasional date and month, and time of day. They therefore do not present evidence of publication or republication in 2020 of Reekes's 2019 "Eyes on Ewe" postings.

*2    The Discovery Rule*

Having concluded that the single-publication rule applies in this instance, we next consider whether the accrual of a cause of action for defamation in this case was delayed by the discovery rule.

The discovery rule "delays accrual [of a cause of action] until the plaintiff has, or should have, inquiry notice of the cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.*

15.

(2005) 35 Cal.4th 797, 807.) The delayed discovery rule has been applied to defamation claims. (*Manguso v. Oceanside Unified School Dist.* (1979) 88 Cal.App.3d 725, 728—731 (*Manguso*).) Under the discovery rule, if a party could not reasonably have discovered the facts giving rise to the cause of action for libel, the statute of limitations starts to run upon discovery of the publication of the defamatory matter. (*Schneider*, *supra*, 208 Cal.App.3d at p. 77.) "Uniform authority establishes that the discovery rule does not apply to delay the accrual of a cause of action for a defamation contained in" a book "generally distributed to the public." (*Shively*, *supra*, 31 Cal.4th at p. 1237.) It is the first general distribution of the allegedly defamatory statement to the general public that defines when a cause of action for defamation accrues and when the statute of limitations begins to run, "regardless of the date on which plaintiff actually learned of the existence of [the general distribution]." (*Ibid.*)

The "discovery rule 'has been applied when the defamatory statement is hidden from view as, for example, in a personnel file that generally cannot be inspected by the plaintiff.' " (*Goldman*, *supra*, 42 Cal.4th at p. 893.) Jones contends that because he (and Adolf) were "blocked" by Reekes from being able to access Reekes's Facebook accounts, they were unable to view the derogatory posts and comments Reekes made about him until June 2020. Jones further contends that pursuant to the discovery rule, his causes of action against Reekes accrued when he first learned of the statements (viz., June 2020, when Adolf showed Jones the screenshots her friend Conry had taken from the defunct "Eyes on Ewe" Facebook page). In Jones's view, it is only when he knew personally that any injury might have occurred that the statute of limitations began to run, and consequently the one-year statute of limitations began running upon Jones's actual discovery of the posts and comments. Based upon this, Jones contends his defamation claim against Reekes (which concededly was filed more than one year after the last posting by Reekes about Jones on "Eyes on Ewe") was nevertheless timely.

16.

As was the case in *Shively*, *supra*, 31 Cal.4th 1230, in this case any defamation cause of action Jones had against Reekes accrued and the statute of limitations ran from the date the statements in question were first generally distributed to the public via the "Eyes on Ewe" Facebook account that Jones complains of (i.e., no later than May 2019), regardless of the date on which Jones actually learned of their existence or read their contents. Reekes's statements about Jones were first generally distributed to the public when Reekes posted them on the "Eyes on Ewe" Facebook site, much like the publication of the book at issue in *Shively*. Reekes did nothing to conceal her identity or her responsibility for the "Eyes on Ewe" postings Jones complains of, and used her full, real name in her postings. The "Eyes on Ewe" postings were made generally available no later than May 2019, more than one year prior to October 2020, the date Jones commenced his defamation complaint against Reekes. Reekes's postings were neither secret nor inherently undiscoverable.

Moreover, the trial court was presented with ample evidence from which it reasonably concluded that Jones could easily have discovered the alleged injury in this case. The declaration of Reekes's retained technical expert, Alan Urquhart, explicitly indicated how Reekes's "blocks" of Jones (and Adolf) from the "Eyes on Ewe" Facebook page could easily be circumvented. This circumvention apparently would have been no more complicated than Jones obtaining another Facebook account with a new email address, or using a different existing email address than the one Reekes had "blocked." Further, Reekes's criticisms of Jones predated even her postings on "Eyes on Ewe." Reekes began posting opinions on the Facebook page Adolf administered in early 2017. Adolf contemporaneously responded negatively to those comments. In fact, according to Jones (and Adolf), that exchange between Reekes and Adolf precipitated Reekes blocking Jones and Adolf from accessing Reekes's Facebook postings (regardless of site) beginning in early 2017. Reekes was known to Jones, and vice versa, in 2017, two years

17.

before Reekes began posting about Jones on the "Eyes on Ewe" Facebook account. More specifically, Reekes's criticisms of Jones were known to Jones in 2017.

Delayed accrual has been justified in professional malpractice cases "on the basis that the expertise expected of professionals is beyond the ability of laypersons to evaluate, and on the further basis that it may be impossible for a layperson even to observe the professional's application of this expertise." (*Shively*, *supra*, 31 Cal.4th at p. 1248.) However, when, as here, the basis for a defamation claim "has been published in the public record or has been the subject of publicity, several cases have declined to apply the discovery rule, commenting that the plaintiff may be expected to be sufficiently diligent to discover the basis of his or her claim within the statutory period." (*Ibid.*)

The discovery rule has also been applied in an instance where a school principal placed a letter containing allegedly libelous statements in a teacher's personnel file in 1960, unbeknownst to the teacher. (*Manguso*, *supra*, 88 Cal.App.3d at p. 727.) It was only in 1976, after sixteen years of fruitlessly seeking further employment, that the teacher became aware of the existence of the letter and that the letter had been read by prospective employers to her detriment. (*Ibid.*) When the teacher filed a defamation action against her former principal, the Court of Appeal held that her cause of action had not accrued until the teacher's discovery of the existence of the letter because she could not reasonably have been expected to discover the basis of her cause of action before then. (*Id.* at p. 731.) The *Manguso* decision noted that statutes of limitation are " ' " 'enacted as a matter of public policy … and [are] intended to run against those who are neglectful of their rights and who fail to use reasonable and proper diligence in the enforcement thereof ….' " ' " (*Manguso*, *supra*, at p. 730.)

Reekes's statements regarding Jones, unlike the letter in *Manguso*, were not published in an inherently secret manner. Reekes posted her comments on a public online forum, unlike the principal in *Manguso*, who buried the letter containing the statements he made in a personnel file utterly inaccessible to the person about whom the

18.

statements were written, and selectively provided the letter only to prospective employers of the teacher. While Reekes did "block" Jones from the "Eyes on Ewe" account, that blockage did not change the fundamentally public nature of "Eyes on Ewe," whose very purpose was to raise public awareness of the accusations Reekes made against Jones. Moreover, the blockage was easily circumvented with reasonable and proper diligence, as evidenced by the supporting declaration provided by Reekes's retained technical expert in this case, Alan Urquhart. Reekes's comments were published in the public record and were the subject of publicity more than a year before Jones filed his claim. We therefore agree with the trial court that the discovery rule does not apply here.

Furthermore, the very fact Reekes blocked Jones on the "Eyes on Ewe" cite should reasonably have placed Jones on notice that Reekes was in all probability posting commentary concerning Jones on that site, which in turn should have prompted Jones to try to circumvent the blockage. Such a conclusion was even more probable given Reekes's 2017 online postings concerning Jones, and given that his "long time" friend Conry had successfully sued Jaymes Gordon, the curator of "Eyes on Ewe," in February 2019 to enjoin the posting of critical statements regarding Conry. In addition, Conry was actively reviewing "The Real California City News" website for derogatory material after the stipulated judgment that resulted in "Eyes on Ewe" being shut down. Jones describes Reekes in his own pleadings as "a prolific Facebook poster who uses the platform's soapbox to air her grievances and provide commentary on matters of public interest in California City and its local politics." In this way, Jones not only had access to the statements (by using the technical work-arounds available to circumvent Reekes's blockage) but also "cause to seek access," that is, a reason to suspect wrongdoing on the part of Reekes. (*Shively*, *supra*, 31 Cal.4th at p. 1249.)

The circumstances of the instant case also differ from those of *Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926 (*Bernson*), a case in which the doctrine of equitable estoppel was applied to delay the accrual of a cause of action for defamation,

19.

and upon which Jones relies here. In *Bernson*, a 36-page dossier "highly critical" of Bernson, a member of the Los Angeles City Council, was circulated anonymously among various Los Angeles media outlets. (*Bernson*, *supra*, at p. 929.) Nothing in the dossier, which stated that Bernson had used campaign funds and charged the City of Los Angeles for "extensive personal travel" expenses, identified who its author, distributor or sponsor was. (*Ibid.*) Bernson became aware that he was the subject of the dossier during the latter half of 1988, but had no information regarding the identity of the parties behind it until February 1990. (*Ibid.*) When two Los Angeles Times journalists told Bernson the identity of the dossier's author (Browning-Ferris Industries), Bernson contacted counsel for Browning-Ferris, who denied any knowledge of the report or its source. (*Ibid.*) Counsel for Browning-Ferris went so far as to send a letter to the Los Angeles Times emphatically denying that Browning-Ferris had any responsibility for the preparation of the dossier, and demanded the newspaper retract its attribution. (*Ibid.*) Bernson accepted Browning-Ferris's representations until May 1991, when another Los Angeles Times reporter informed Bernson's chief deputy that a specific political consultant had prepared the dossier on Browning-Ferris's behalf. (*Ibid.*) Bernson then filed a defamation action against the political consultant, Browning-Ferris, and others. (*Bernson*, *supra*, at pp. 929—930.)

The *Bernson* trial court sustained the defendants' demurrer and motions for summary judgment on the basis of the one-year statute of limitations, and entered judgments in their favor. (*Bernson*, *supra*, at p. 930.) Bernson appealed, arguing that the defendants should have been estopped from asserting the statute of limitations defense because they had actively concealed their responsibility for the dossier. (*Ibid.*) The defendants responded that Bernson's cause of action against them accrued no later than when he learned of the defamatory report in late 1988, and that neither Bernson's ignorance nor defendants' concealment of their responsibility for the report tolled the statute. (*Ibid.*) Describing the principle of fraudulent concealment as a "close cousin of

20.

the discovery rule," the California Supreme Court stated that under the discovery rule, "the date of accrual may be delayed where the defendant's actions hinder plaintiff's discovery of the defamatory matter." (*Bernson*, *supra*, at pp. 931—932.) *Bernson* also noted that "[w]hile ignorance of the existence of an injury or cause of action may delay the running of the statute of limitations until the date of discovery, the general rule in California has been that ignorance of the identity of the defendant is not essential to a claim and therefore will not toll the statute." (*Ibid.*)

The statements of Reekes that Jones complains of were all published by virtue of being posted on the "Eyes on Ewe" Facebook site more than one year prior to the filing of Jones's defamation complaint. (*Grenier, supra*, 234 Cal.App.4th at p. 481 ["Statements made on a Web site are made in a public forum"].) The fact that Jones may not have been immediately aware of the statements does not matter. The statements were publicly posted to third persons (i.e., persons other than Jones) no later than May 2019, when Jaymes Gordon shut down the "Eyes on Ewe" Facebook page. Because Jones had access to Reekes's statements from the time they were published (whether he pursued such access or not), the principle of equitable estoppel articulated in *Bernson* does not apply.

While in some instances the accrual of a cause of action in tort is delayed until the plaintiff discovered (or reasonably should have discovered or suspected) the factual basis for his or her claim, the circumstances of this case do not lend themselves to the discovery rule. Because the statements of Reekes that Jones complains of were published with general circulation, the discovery rule does not apply to delay the accrual of Jones's causes of action for defamation contained in such publication. (*Goldman*, *supra*, 42 Cal.4th at p. 887; *Shively*, *supra*, 31 Cal.4th at p. 1245.)

## CONCLUSION

Because the statements of Reekes that Jones complains of were first generally distributed to the public when they were posted on the "Eyes on Ewe" Facebook site,

Jones's defamation cause of action against Reekes accrued at that time, and the statute of limitations began to run at that time. Jones's cause of action for defamation against Reekes for her "Eyes on Ewe" postings accrued no later than May 12, 2019, when "Eyes on Ewe" was shut down.

As explained above, the discovery rule does not delay the accrual of Jones's cause of action. The provision of the "Eyes on Ewe" screenshots to Jones in June 2020 by way of Adolf do not constitute a "republication" of the statements for purposes of the single-publication rule. Any basis upon which to apply the discovery rule (e.g., concealment, difficulty in ascertaining) was dispelled by Reekes's public distribution of the statements via "Eyes on Ewe," even though Reekes took steps to block Jones from openly following her on "Eyes on Ewe." Jones has not complained of any other statements by Reekes with adequate specificity or particularity as to the date of their publication. Accordingly, we decline to apply the discovery rule in the circumstances presented by this case. Jones's defamation cause of action against Reekes for Reekes's "Eyes on Ewe" postings is time-barred, and as such Jones did not demonstrate a probability of prevailing on that cause of action. We therefore affirm the judgment of the trial court in favor of Reekes.

## DISPOSITION

The judgment is affirmed. Reekes shall recover her costs on appeal.

SNAUFFER, J.

WE CONCUR:

PEÑA, ACTING P. J.

DE SANTOS, J.

22.